484 So.2d 583 (1986)
Theodore B. TAMER, Petitioner,
v.
STATE of Florida, Respondent.
No. 66711.
Supreme Court of Florida.
March 6, 1986.
Ronald A. Dion of Entin, Schwartz, Dion & Sclafani, North Miami Beach, for petitioner.
Jim Smith, Atty. Gen. and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for respondent.
SHAW, Justice.
This cause is before us pursuant to the certification of a question of great public *584 importance from the Fourth District Court of Appeal. Tamer v. State, 463 So.2d 1236 (Fla. 4th DCA 1984). We have jurisdiction under article V, section 3(b)(4), Florida Constitution.
Petitioner's probation was revoked based on evidence obtained following an investigatory stop. He argued on appeal that the evidence was improperly admitted at his probation revocation hearing because his initial detention was not founded upon a reasonable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. The district court first determined that the exclusionary rule continues to be applicable to probation revocation hearings in Florida, but certified the following question:
Under the 1983 amendment to article I, section 12 of the Florida Constitution, does the exclusionary rule apply in probation revocation hearings?
Tamer, 463 So.2d at 1238-39.
The district court went on to hold that the initial stop of petitioner was valid. The essential facts were recounted as follows:
Police Officer Dwight Snyder testified that he observed Tamer at 1:05 A.M. on May 14, 1983, driving a station wagon with an open tailgate through the parking lot of the Westland Executive Plaza in Hialeah. The Plaza, a medical building housing thirty-five doctors' offices, was closed at the time.
Tamer drove out of the lot to another parking lot across the street. Officer Snyder, who was aware that there had been a recent rash of fires in doctors' offices in the area, followed Tamer in his marked patrol car. Upon observing the police vehicle, Tamer made a sharp U-turn with tires squealing and drove to a nearby restaurant where he parked the auto, closed the tailgate, and proceeded to walk toward the building. At that point, Officer Snyder detained Tamer and asked for his driver's license and registration. Tamer complied, and upon questioning explained that he was looking for an open restaurant.
Tamer was arrested after a records check of the vehicle showed that the vehicle tag had been reported stolen.
Id. at 1239. We agree with the district court that petitioner's detention was justified at its inception. Although none of the facts standing alone might give rise to a reasonable suspicion, taken together as viewed by an experienced police officer they provided clear justification for a brief detention. See United States v. Sharpe, ___ U.S. ___, 105 S.Ct. 1568 n. 3, 84 L.Ed.2d 605 (1985). As stated in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981):
Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like "articulable reasons" and "founded suspicion" are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances  the whole picture  must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.
The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions  inferences and deductions that might well elude an untrained person.
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated *585 certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same  and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.
Id. at 417-18, 101 S.Ct. at 695 (citations omitted). We believe the circumstances observed by Officer Snyder, a seven-and-one-half-year veteran police officer, were sufficient for him to reasonably suspect petitioner of criminal activity. They were sufficient for the short investigatory stop which produced evidence sufficient for a probable cause arrest.
As we approve the district court's holding regarding the stop, we find it unnecessary in this case to answer the certified question. We prefer to address that question in a case wherein evidence is seized illegally. Accordingly we approve the decision of the district court in this case finding a valid investigatory stop.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
BARKETT, J., concurs with an opinion, in which ADKINS, J., concurs.
BARKETT, Justice, concurring.
I concur because the defendant had been detained only about thirty seconds when the officer learned that the tag on the station wagon had been reported stolen.
ADKINS, J., concurs.