521 So.2d 334 (1988)
Basil KING, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-1838.
District Court of Appeal of Florida, Fourth District.
March 9, 1988.
Richard Jorandby, Public Defender, and Don Stephens, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Lee Rosenthal, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a judgment and conviction based upon a warrantless stop and search. The defendant pled nolo contendere to the charge of possession of a controlled substance, reserving his right to appeal the trial court's denial of his motion to suppress. We conclude the stop and search were constitutionally defective, thus violative of the defendant's rights. Accordingly, we reverse the conviction and remand with direction that the trial court proceed consistent herewith.
The transcript on the hearing on the motion to suppress reflects that the following took place about noon on the day in question:
A. My name is Officer Greg Kirk and I'm a police officer with the Ft. Pierce Police Department.
Q. How long have you been employed with the Ft. Pierce Police Department?
A. Approximately five and half years.
Q. During that five and a half years, what  what capacity have you worked for the department?
A. I've been a patrolman.
Q. Okay, working the streets?
A. Yes ma'am, working the streets.
Q. What area at the present time, or say within the last year, have you worked? Do you work zones?
A. Yes ma'am, I work the north area of town, north of Orange Avenue.
Q. Okay.
A. Which is the Avenue D area.
Q. Now I want to take you back to I believe it's January of '86. Were you working that area in January?

*335 A. Yes ma'am, I was.
Q. On January 20th did you happen to be in that area around noontime?
A. Yes, I was in the area on routine patrol around 10th and Avenue D.
Q. Would you des  describe to the court the area that you're talking about and basically what type of area it is.
A. Okay, the area that I was in  on patrol in, it's a high drug area, high prostitution area, just an overall crime ridden area.
Q. While on patrol did you notice anything unusual at that time?
A. Yes, when I turned on to 10th Street off of Avenue D  or off of Avenue E, Echo, I was heading south on 10th Street approaching Avenue D, two known drug houses I observed a maroon I believe Monte Carlo, which was in between two drug houses, it was a Chevrolet, '78 Chevrolet maroon in color, Florida tag VAK 163, and two white males were occupying the vehicle.
Q. The two white males were inside the car?
A. Yes ma'am, both of 'em were sitting in the car.
Q. And was it parked on the street?
A. No, it was pulled up in between the two houses and you had a Mexican male and a black male standing at the driver's side of the door speaking with the driver of the vehicle.
Q. Now you've been working with the police department five and a half years and you've worked that area for some time. How long have you worked that particular area?
A. Almost the whole time that I've been with the police department.
Q. Now is that unusual to see two white males parked in a car talking to a black and a Mexican?
A. It's not unusual, it just keys in my mind that there's a drug deal going down or something illegal is happening there, an exchange of stolen property or something of that sort.
Q. Did you recognize any of those individuals?
A. Yes. Well, as the  as I approached the vehicle, the black male walked away very rapidly. Okay, now the black male is Darly Galloway which is a known drug dealer and has been arrested several times.
Q. And he's known to you as a drug dealer?
A. Yes ma'am, I've arrested him myself. Okay, now the Mexican male  excuse me  I don't know his name but he's been in the area for quite a while and he walked away in a very slow  at a very slow pace.
Q. When you saw that happen, what did you do at that time?
A. Okay, at that time I let the two individuals walk away and I stopped to get out to speak with the occupants of the vehicle.
Q. Do you see any  either of those two occupants of the car in court today?
A. Yes.
Q. Would you point him out for the court, please.
A. Basil King.
MS. PARK: Let the record reflect he's identified the defendant Basil King.
MR. KESSLER: No objection.
BY MS. PARK:
Q. What did you do at that time?
A. Okay, at that point I had both subjects step out of the vehicle and due to the fact of what was taking place for my own safety I patted both subjects down. Okay, upon patting  I patted Basil down first and at that time I didn't feel anything that felt like a weapon or any type of awkward lumps in their clothing. Okay, at that point I went to the codefendant which is Charles Flynn Limberis  Limberis (phonetic), okay, upon patting him down there was a baggie of marijuana in his top pocket to where you could see the baggie sticking out and once I patted it I could feel that there was something inside the baggie so I pulled the baggie out and saw that it was a brown leafy substance which appeared to be marijuana. At that time I started to handcuff him. Okay, after I handcuffed him and started walking 'em *336 to the car, that's when I observed out of the corner of my eye Mr. King attempting to conceal something in his wallet.
Q. When you saw him attempting to conceal something in his wallet, what, based on your experience as a police officer and working this area and drugs and so forth, what crossed your mind?
A. At that point in time I felt for sure he was definitely concealing some type of drug of some sort. Okay, especially since I just got done arresting his buddy for possession itself and the fact that Daryl Galloway was at the window. That gave me reason to believe that he was definitely concealing something illegal.
Q. Okay, what do you do?
A. Okay, at that point I walked over to Basil and I asked him to hand me his wallet. Okay, when he handed me his wallet, I put it in my hand and there was a very large lump to where you could tell it wasn't a piece of paper or anything like that, that there was something inside of it. Upon opening up the wallet, I pulled out a aluminum foil  something  a big ball of aluminum foil. Upon opening that up, there was a powdery substance which appeared to me to be heroin, either heroin or cocaine.
Q. Did you arrest the defendant at that point?
A. Yes ma'am, at  at that point I placed him under arrest for possession of illegal  a controlled substance.
The pertinent law is summarized in the following excerpt from G.J.P. v. State, 469 So.2d 826, 827 (Fla. 2d DCA 1985):
A law enforcement officer may temporarily detain a person for purposes of investigation under circumstances reasonably indicating that the person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1983). Although the detention may be based upon something less than probable cause, it cannot be based upon mere or bare suspicion of criminal activity. Coladonato v. State, 348 So.2d 326 (Fla. 1977); Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984); Wilson v. State, 433 So.2d 1301 (Fla. 2d DCA 1983).
To justify temporary detention of a person, there must be a "founded" suspicion in the mind of the police officer that the person has committed, is committing, or is about to commit a crime. Wilson; Carter; Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). A "founded" suspicion is one which has some factual foundation in the circumstances observed by the officer when those circumstances are interpreted in light of the officer's knowledge. Stevens; Wilson. Mere suspicion, on the other hand, is no better than random selection, sheer guesswork, or hunch; it has no objective justification. Stevens.

Cf. Levin v. State, 449 So.2d 288 (Fla. 3d DCA 1983).
In G.J.P. the bases of the officers' detention of the appellant may be summarized as follows: (1) the automobile with two occupants was parked in an alley leading to an open field; (2) a bicycle was parked next to the automobile; and (3) the site was a high crime area, but the officers had had no recent reports of an auto theft or any other crime in the area. The G.J.P. reviewing court held these facts constituted no more than a bare suspicion, on the basis of which the officers were not entitled to detain the appellant by ordering him out of the car.
As the officers in G.J.P. approached the parked automobile on foot they noticed that the appellant, sitting in the passenger's seat, made a quick movement. The G.J.P. reviewing court held that this fact did not raise the officer's bare suspicion to a "founded" suspicion that the appellant was engaged in or about to engage in criminal conduct. Id. Accordingly the G.J.P. reviewing court held it to be improper that the officers ordered the appellant and his companion out of the automobile, conducted a pat-down search, and looked into the passenger side of the vehicle, observing a partially concealed baggie containing a brown substance. The reviewing court held that both the baggie containing the controlled substance and the statements *337 appellant made upon arrest  which took place at once  should have been suppressed.
In the present case the officer testified that (1) the site was a high crime area; (2) the vehicle parked between two known drug houses contained two white men; (3) standing beside the car on the driver's side were a Mexican male and a black male, the latter of whom the officer knew as a drug dealer; and (4) the drug dealer walked away quickly as the officer approached. This may be a reasonable basis for bare suspicion; but without more, such as seeing something change hands between the alleged drug dealer and the car occupants, it is not a founded suspicion.
HERSEY, C.J., and DOWNEY, J., concur.