532 So.2d 1316 (1988)
Edward Lee CURRY, Appellant,
v.
STATE of Florida, Appellee.
No. 88-607.
District Court of Appeal of Florida, First District.
October 27, 1988.
Michael E. Allen, Public Defender, and Maria Ines Suber, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Edward Lee Curry appeals his conviction and sentence for possession of cocaine and phentermine, alleging that the trial court erred in denying his motion to suppress the evidence seized from him as a result of an illegal stop. For the reasons stated below, we affirm.
Curry was charged by information with possession of cocaine and phentermine as a result of a November 24, 1987 incident. Prior to trial, Curry filed a motion to suppress the evidence seized from him as a result of an alleged illegal stop. At the suppression hearing, James Thurne, a Jacksonville police officer, testified that on November 24, 1987, the department received a call on its "crack cocaine hotline" about drug activity in the Pottsburg Creek project, known as a high crime area. That evening, about 8:45 p.m., Thurne, along with several other officers wearing police jackets, went to an area in the project known for drug dealing. Upon their arrival, Thurne observed several black males running in different directions, some yelling "police." Thurne started chasing Curry because "[h]e was running from the area that we had received calls on, and we didn't know where he was running. We wanted to find out where he was running." Thurne said there was no other reason why he would have come into contact with Curry at that time. When Curry eventually slowed down, Thurne was able to catch up with him and as Thurne approached him, Curry "turned around and put his hands behind him. I asked him what he had behind him. And he wouldn't ever say anything. I grabbed him. I didn't know what he had."
According to Thurne, the purpose for his making contact with Curry as he approached him was that he was concerned for his safety because he did not know if Curry had a gun in his hand. Thurne said he was concerned for his safety because the police had gotten a lot of calls "where *1317 they were out shooting and carrying on with different types of weapons." In Curry's hand Thurne found a glass pipe that was commonly used to base cocaine. Officer Thurne then advised Curry of his Miranda rights and arrested him for possession of drug paraphernalia. A subsequent search of Curry's person revealed what appeared to be cocaine and some pills. Thurne stated that if Curry had not put his hand behind his back when he slowed down, he would have asked him for an I.D. and asked Curry why he ran away from him. Thurne admitted that Curry had never been previously identified to him as a drug dealer and that he had not had any prior contact with Curry. Thurne also stated that prior to Curry's actually stopping, Curry did not make any threatening moves toward him. When asked if he had personally observed Curry perform any illegal activity, Thurne responded that he couldn't tell, because "there was a bunch of them in the darkness."
The trial court ruled that the police had the right to stop and detain Curry and ask him for identification, and that when he saw Curry try to hide something in his hand behind his back, the officer had the right to ascertain what the defendant was concealing. Accordingly, the trial court denied the motion to suppress.
A jury trial was held in February 1988, at which time Officer Thurne reiterated his testimony from the suppression hearing. Thurne also stated that when he asked Curry about the items found on him, Curry voluntarily said that "he smoked rocks, that he didn't sell them, and that the pills or the capsules were antibiotics that he was taking." On cross-examination, Thurne admitted that he did not personally take the call to the crack cocaine hotline, and that as far as he knew, no physical description of the people involved in the drug activity had been provided.
Curry testified that on the night in question he was talking to an acquaintance by the side of the road when he observed the police arrive, jump out of the car, and say, "Vice." Curry said he was standing across the street when he observed an officer pick something up from the ground and come over to where he was standing. The police officer asked Curry's acquaintance what a white boy was doing in the area, while Curry told the officer that he lived down the street and that he could prove it. However, the officer, stating that no white boy lived in the neighborhood, told Curry that the cocaine had to be his and told him to walk across the street, where Curry was placed under arrest. Curry denied having any cocaine when searched. The jury found Curry guilty as charged and he was sentenced to concurrent three-year prison terms.
On appeal, Curry contends that his stop was illegal because Officer Thurne had no "founded suspicion" that Curry was committing, had committed, or was about to commit a crime as required by § 901.151, Fla. Stat., and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He argues that no "founded suspicion" could be predicated on the anonymous tip, because the tip itself lacked any indication of reliability, and that no well founded suspicion could be predicated on the fact that he fled the area on the arrival of the police officers because flight alone is insufficient to justify a temporary stop. The state counters that based on the totality of the circumstances, Officer Thurne acted reasonably when he grabbed Curry for the purpose of seeing what Curry was trying to hide behind his back, and that because the initial seizure of the contraband paraphernalia and Curry's arrest were lawful, the fruits of the search executed incident to the arrest were properly admitted into evidence.
The admissibility of the drugs in this case turns on whether the stop and search of appellant was justified and permissible under the "stop and frisk" law. § 901.151, Fla. Stat. (1987). To justify such a stop and detention, a law enforcement officer must have a "founded suspicion" based upon factual observations in light of his knowledge and experience that the person has committed, is committing, or is about to commit a crime. § 901.151; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer's assessment of the totality of the circumstances "must raise a suspicion *1318 that the particular individual being stopped is engaged in wrongdoing." Tamer v. State, 484 So.2d 583, 585 (Fla. 1986). A "mere suspicion" or "hunch" is not enough. Coladonato v. State, 348 So.2d 326 (Fla. 1977).
We note that under certain circumstances, mere presence in a high crime area has been held to be insufficient to raise a founded suspicion of criminal activity justifying a temporary detention. G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985). See also State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988); Morris v. State, 519 So.2d 706 (Fla. 2d DCA 1988); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988). Nor does flight alone necessarily justify a belief that an individual is engaged in criminal activity. Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987). In addition, in the following cases, the fact that a suspect placed his hand behind his back after seeing the police, without more, did not give rise to a founded suspicion. Jenkins v. State, 524 So.2d 1108 (Fla. 3d DCA 1988) (fact that defendant, who was walking along public street at night in high crime commercial area, was observed placing his left hand behind his back as if to put something down his pants insufficient to support stop and pat-down search); R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983) (fact that defendant quickly placed his hand in pocket after seeing police car did not give rise to founded suspicion).
We consider these cases factually distinguishable from the case at bar. Looking at the totality of the circumstances of this case, we are unable to conclude that the officer's conduct was unreasonable or that the situation did not rise to the level of a founded suspicion. Although none of the facts standing alone might give rise to a reasonable suspicion, taken together as viewed by an experienced police officer they provided justification for detention. The circumstances observed by Officer Thurne were sufficient for him to reasonably suspect Curry of criminal activity and to conduct an investigatory stop that produced evidence sufficient for Curry's arrest and subsequent search. Tamer v. State, 484 So.2d at 584-85.
AFFIRMED.
ERVIN and WENTWORTH, JJ., concur.