547 So.2d 699 (1989)
Alvin JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2035.
District Court of Appeal of Florida, First District.
August 2, 1989.
*700 Michael E. Allen, Public Defender, and Michael J. Minerva, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Alvin Johnson appeals the trial court's order denying his motion to suppress evidence. Johnson entered a plea of nolo contendere to one count of possession of cocaine in violation of section 893.13(1)(e), Florida Statutes, with reservation of right to appeal the denial of his motion to suppress. We reverse.
On May 25, 1988, Escambia County narcotics officers conducted a routine sweep in an area where illegal drug sales had been observed by other officers and area citizens. The nearly daily sweeps in the area were in response to complaints from people in the community that drug sales were so frequent at one particular corner that traffic could not flow freely. On the day of appellant's arrest, the officers arrived in a white van. All of the officers were wearing jackets with Escambia County Sheriff's Office lettering. In addition, the officers had badges, police radios, and guns. As the officers exited the van, persons in the area began shouting "99," a code name for police. Before Officer Williams got out of the van, she observed appellant standing at a street corner talking with two black females. As Officer Williams left the van amid the shouts of "99," she observed appellant and his companions walking away at a brisk pace, turning their heads frequently to see what the officers were doing.
Officer Williams called to appellant and his companions five or six times, asking that they return. The three returned in response to Officer Williams's request, and Sergeant Thomas walked over to the group. When Sergeant Thomas asked appellant his name, he responded truthfully. However, when asked for identification, appellant denied having any with him. At that point, Sergeant Thomas asked appellant what he had in his pocket. Appellant responded in an evasive manner, whereupon the officer reached in appellant's pocket and extracted what proved to be a small *701 brown paper sack which contained slabs of cocaine.
At the suppression hearing, Sergeant Thomas said that because of his dress, he considered it unusual that appellant would not have any identification. The sergeant explained that most of the people in the area where the drug sweeps occurred are laborers or port workers, and due to the nature of their work, they often do not carry wallets. In contrast, the officers described appellant as well dressed, in white shorts, a red and white striped shirt, and a straw hat with a red band. In view of appellant's attire, when he denied having any identification and failed to explain the bulge in his pocket, Sergeant Thomas concluded he was attempting to conceal his identity, perhaps to avoid service of an outstanding warrant. When asked whether he thought the object in appellant's pocket was a weapon, the officer candidly stated that he did not see the outline of a gun; rather, the bulge in appellant's pocket had the outline or appearance of a wallet.
In the oral ruling on the motion to suppress, the trial court recognized that the officer's search was not directed to determining whether appellant had a weapon, but rather was an effort to corroborate appellant's identity. In the written order denying the motion to suppress, the trial court found that the collective observations of officers Williams and Thomas warranted a reasonable suspicion that criminal activity was afoot. Having found the investigatory detention reasonable, the trial court treated the withdrawal of the object, which the officer surmised to be a wallet, as a frisk for weapons. In this regard, the order denying the motion to suppress contains several references to the officer's purported patting of appellant's pocket before reaching in to withdraw the object. We note, however, that there is nothing in the record which could support a finding that the officer in this case conducted the brief pat down permissible under Florida's "Stop and Frisk Law." See § 901.151, Fla. Stat. (1987); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Under the provisions of section 901.151(2), Florida Statutes, a law enforcement officer may detain temporarily a person he encounters "under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit" a crime, for the purpose of ascertaining the identity of the individual and the circumstances giving rise to the suspicion. If the officer has probable cause to believe that the person detained is armed with a dangerous weapon, he may search the person detained only to the extent necessary to disclose the presence of a weapon. § 901.151(5), Fla. Stat. (1987).
The propriety of an officer's founded suspicion is assessed by a consideration of such factors as the time of day, the physical appearance and behavior of the suspect, or anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge. Gipson v. State, 537 So.2d 1080, 1081 (Fla. 1st DCA 1989). In other words, the officer's assessment, based on the totality of the circumstances, must raise a suspicion that the person stopped is involved in criminal activity. Tamer v. State, 484 So.2d 583, 585 (Fla. 1986); Curry v. State, 532 So.2d 1316, 1317-18 (Fla. 1st DCA 1989). A bare suspicion of criminal activity, such as that engendered by flight from an approaching officer, even in a high crime area, does not give rise to a founded suspicion and does not justify a stop and frisk. Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989); Gipson, 537 So.2d at 1081; Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987).
Our review of the record in this case reveals that the officers failed to articulate specific facts which, when taken together with reasonable inferences to be drawn from those facts, would warrant the intrusion. Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880. Officer Williams said her attention was drawn to appellant because he was better-dressed than persons commonly seen in the area, and that she called to appellant to return simply because he *702 and his companions halted their former relaxed conversation and walked briskly away as the code name for police rang out about the streets. Again, flight alone from approaching police, is not sufficient to meet the "founded suspicion" standard enunciated in Terry and incorporated into section 901.151. See, e.g., Daniels, 543 So.2d 363; Gipson, 537 So.2d at 1081. Moreover, we find that the added elements of appellant's presence in an area known for drug trade coupled with what one officer termed a "flashy" manner of dress, are not sufficient to enhance the existing articulable facts so as to render the stop lawful.
We find, therefore, that the officer's use of self-help to obtain the object which he believed to be a wallet was improper in the circumstances of this case. Here, as in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), appellant was observed talking with other persons. The attitudes of the three conversants in this case appeared relaxed and were seemingly unremarkable. Nothing was seen to be passed between appellant and his two companions. Moreover, the officer acknowledged here, as did the officer in Sibron, that he did not reach into appellant's pocket due to a concern that appellant was armed. Quite simply, the officer's goal was to ascertain appellant's identity.
We recognize that in Harper v. State, 532 So.2d 1091 (Fla. 3d DCA 1988), review denied, 541 So.2d 1172 (Fla. 1989), the Third District approved an officer's use of self-help to verify the defendant's identity. However, in Harper, unlike the circumstances in this case, the identification search followed a valid Terry stop. On the basis of the specific and articulable facts, which reasonably warranted the intrusion, the Third District concluded that an officer may conduct a non-consensual search for the identification which a Terry stop entitles him to request, and impliedly to receive. Harper, 532 So.2d at 1095.
Because we find the investigatory stop in this case was not supported by sufficient articulable facts to render the stop lawful, we find it unnecessary to reach the issue of the propriety of the officer's use of self-help to obtain the requested identification. Nevertheless, we find ourselves in agreement with the Third District's decision in Harper, i.e., that in appropriate circumstances, an officer may conduct a non-consensual search in connection with a lawful investigatory detention in an effort to verify identity.
In summary, after consideration of the totality of the circumstances incident to the investigatory detention in this case, we find those circumstances insufficient to support a founded suspicion of criminal activity. Accordingly, the order denying appellant's motion to suppress is reversed, and this cause is remanded for proceedings consistent with this opinion.
SHIVERS, C.J., and ERVIN, J., concur.