561 So.2d 638 (1990)
Michael STEELE, Appellant,
v.
STATE of Florida, Appellee.
No. 89-2038.
District Court of Appeal of Florida, First District.
May 7, 1990.
*639 Henry R. Barksdale, P.A., Milton, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant Michael Steele appeals his adjudication of guilt and the sentence imposed for the offense of possession of drug paraphernalia. The issues for review are: (1) the trial court's denial of appellant's motion to suppress evidence, (2) the trial court's denial of appellant's motion for judgment of acquittal, and (3) the trial court's denial of appellant's requested jury instruction that possession of drug paraphernalia required the state to prove intent to use the drug paraphernalia. We affirm in part, and reverse in part.
A hearing on appellant's motion to suppress took place immediately before the *640 trial of this cause. The evidence established that at 5:20 p.m. on March 3, 1989, narcotics officers responded to telephone calls reporting that several black males were standing at the back of the Escambia Arms apartments dealing in drugs. The officers traveled to the apartment complex in a police van. When the officers arrived, Deputy Salter observed a black male leaning in the passenger side of a brown Ford LTD automobile, where appellant was seated. The deputy stated that from her distance of fifteen feet, she saw the person standing outside the Ford pass an object to appellant, who was seated in the front passenger seat of the vehicle. The deputy testified that it was daylight, and she could see the object clearly. Immediately after the police van pulled up, the driver of the Ford began to back the automobile.
The sergeant in charge directed Deputies Salter and Williams to go to the passenger side of the automobile, while the other officers went to the driver's side. As Deputy Salter went around the front of the car, she saw appellant put a "white square-type substance" in his mouth. The deputy testified that, based upon her training and experience as a narcotics officer, she believed the white object to be crack cocaine. She said that Deputy Williams grabbed appellant by the neck to prevent him from swallowing the object in his mouth. Once the automobile was stopped, Deputy Salter removed appellant from the vehicle, and conducted a pat down of his person. She felt an object in appellant's right front pocket, and removed it. The object proved to be a crack pipe. The deputy then arrested appellant, and charged him with possession of cocaine and possession of drug paraphernalia.
During cross examination, Deputy Salter said she searched appellant solely because she saw him put an object in his mouth and swallow it. The deputy further stated that although she was searching for a weapon, her primary purpose was to determine whether appellant had any drugs. She said that when she patted the side of appellant's pocket, the object within felt like a knife. However, when she removed it, she found it was a crack pipe. Deputy Salter said that leaning into a vehicle is typical of a drug transaction in the Escambia Arms area. She stated she first approached the car because of the activity she observed, and she searched appellant because she saw the white object in his hand.
The trial court denied the motion to suppress, and the jury trial commenced. At trial, Deputy Salter repeated the testimony she had given at the suppression hearing. A Florida Department of Law Enforcement chemist testified that the crack pipe seized from appellant's pocket contained minute traces of cocaine residue. Upon completion of the chemist's testimony, the state rested its case in chief.
The defense then moved for judgment of acquittal, on grounds of insufficiency of the evidence to prove that appellant used the drug paraphernalia or that he possessed it with intent to use. The state argued that the jury instructions pertaining to possession of drug paraphernalia set forth only two elements, possession of drug paraphernalia and knowledge of the presence of drug paraphernalia. The trial court denied the motion for judgment of acquittal, deeming the chemist's testimony sufficient to submit the question to the jury.
Appellant testified in his own behalf. He denied that he swallowed anything, and denied ownership of the crack pipe. Appellant said that someone had placed the antenna wire, which had been used as a crack pipe, under the dashboard of the automobile. It rolled out onto the floorboard as the automobile was backed. Appellant said he knew what the object was used for, but maintained that he had never used it, and that he did not know who owned it. Appellant further stated that he does not use drugs, and has a provable medical condition which would preclude his ever using illegal drugs. He stated that he placed the pipe in his pocket, because he knew he would be suspected of wrongdoing if it were found in his presence. At the conclusion of the defense case, the defense moved for a dismissal on the grounds previously argued, i.e., that the state failed to make a prima facie case that appellant used or possessed *641 with intent to use the drug paraphernalia in question. Defense counsel again referred the trial court to the statute, asserting that under its provisions the state was required to prove use or possession with intent to use the paraphernalia in question. The state responded that if intent to use the crack pipe was an issue, the evidence of possession made the matter a jury question. The motion for dismissal was denied.
At the charge conference, the trial court announced its intent to give the standard jury instructions, including the general instructions and the statement of the charge. Defense counsel then requested an additional jury instruction which would comport with the elements set forth in the statute as necessary to prove possession of drug paraphernalia. Upon ascertaining that the requested instruction had not been prepared in written form, the trial court stated that it would give the standard jury instruction as it was written.
During argument, defense counsel advised the jurors that it was the state's duty to prove that appellant used the pipe unlawfully, or possessed it with intent to use it unlawfully, not that he simply possessed it. The state advised the jurors that when they "listened to the instructions on the law from the Judge, [they would] find that the word intent is not in those two elements." In closing, defense counsel asked the jurors to look at the charging document, which accused appellant of possession and the intent to use.
As a preface to its instructions to the jury, the court observed that the jurors had been advised that statements of counsel were not the law, and that what the court says "is the law." With regard to the possession of drug paraphernalia, the trial court gave the following instruction:
Before you can find the defendant guilty of paraphernalia, the State must prove the following two elements beyond a reasonable doubt: One, that Mr. Steele had in his possession drug paraphernalia; two, that Mr. Steele had knowledge of the presence of the drug paraphernalia.
The jury found appellant not guilty of the Count I charge of possession of cocaine, but found him guilty as charged of Count II possession of drug paraphernalia. At proceedings of July 12, 1989, appellant was adjudged guilty, and sentenced to serve 364 days in the county jail, with credit for time served.
The first issue is directed to the denial of appellant's motion to suppress evidence. Both parties recite the appropriate guidelines and authority for determining the propriety of a "stop and frisk," pursuant to section 901.151, Florida Statutes, termed a codification of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See State v. Webb, 398 So.2d 820 (Fla. 1981). That is, to pass constitutional muster, a temporary stop must be based upon reasonable or founded suspicion that the individual stopped has committed, is committing, or is about to commit a crime. Tamer v. State, 484 So.2d 583, 584 (Fla. 1986); Webb, 398 So.2d at 822; Johnson v. State, 547 So.2d 699, 701 (Fla. 1st DCA 1989); Daniels v. State, 543 So.2d 363, 365 (Fla. 1st DCA 1989); R.E. v. State, 536 So.2d 1125, 1127 (Fla. 1st DCA 1988). While an officer may stop a vehicle on less than probable cause, a bare suspicion that its occupants are violating the law is insufficient. Coladonato v. State, 348 So.2d 326, 327 (Fla. 1977).
The reasonableness of the officer's suspicion must be based on the totality of the circumstances, encompassing such factors as the time of day, the locale of the stop, the appearance and behavior of the suspect, and the officer's training and experience. Tamer, 484 So.2d at 584; Johnson, 547 So.2d at 701; State v. Hoover, 520 So.2d 696, 697 (Fla. 4th DCA 1988). The fact that the suspect is in a high crime area, without more, is insufficient to justify a stop. Johnson, 547 So.2d at 702; Hoover, 520 So.2d at 698. Moreover, a founded suspicion of criminal activity is not warranted by an officer's observation of a pedestrian leaning into a car in a high crime area. Hoover, 520 So.2d at 698.
In the instant case, the state focuses much of its argument on the propriety of the search conducted after the initial *642 stop. However, as appellant maintains, the appropriate focus is the reasonableness of the stop itself. The circumstances of the initial stop in this case bear some similarity to the situations in L.D.P. v. State, 551 So.2d 1257 (Fla. 1st DCA 1989); Johnson; and King v. State, 521 So.2d 334 (Fla. 4th DCA 1988). In L.D.P., officers received an anonymous tip that there were several black males selling drugs on a specified corner. The officer responding to the call observed several black males, some on bicycles and some standing, who walked in different directions when they saw the marked patrol car. The area was a "high drug area." The officer ordered the individuals to stand against the patrol car, and searched each one. An automatic pistol and six rounds of ammunition were found on L.D.P., and he was placed under arrest for carrying a concealed firearm. The court concluded that the anonymous tip by itself was vague and insufficient to provide a founded suspicion. In addition, the officer did not observe any suspicious activity or behavior at the scene which could have provided a founded suspicion independent of the anonymous tip. Therefore, the search was found to be unlawful, and denial of the motion to suppress was reversed.
In Johnson v. State, police conducted a regular sweep of an area known for drug activity. During the course of such sweep, Johnson was observed at a street corner, conversing with two companions. When the code name for police was shouted, Johnson and his companions walked away at a brisk pace. The officers called to them to return. When asked to identify himself, Johnson gave a name and address which subsequently proved to be accurate, but told the officer he was not carrying a wallet containing identification. The officer observed a bulge in the pocket of Johnson's shorts, and extracted it, thinking it was a wallet. The object proved to be a brown paper sack which contained slabs of cocaine. In Johnson, as in L.D.P., the court found the investigatory stop unlawful because it was not supported by sufficient articulable facts. Notably, in Johnson, the court observed that nothing was seen to be passed between Johnson and his companions, nor was their conduct otherwise remarkable in any way.
In King, the circumstances involved (1) a locale known as a high crime area, (2) two white men seated in a vehicle parked between two known drug houses, (3) a Mexican male and a black male known to the officer as a drug dealer standing beside the car on the driver's side, and (4) the drug dealer's quick departure as the officer approached. The court found the articulated facts constituted a reasonable basis for bare suspicion; "but without more, such as seeing something change hands between the alleged drug dealer and the car occupants, it is not a founded suspicion." 521 So.2d at 337.
In this case, police officers responded to a telephone tip that several black males were at the back of the Escambia Arms apartments dealing drugs. The area was known as a high crime area. When the officers arrived, they saw four persons seated in a Ford LTD, and a person standing outside the car leaning in the window on the passenger side where appellant was seated. When the officers observed something pass from the hand of the individual standing outside the vehicle to someone in the vehicle, they approached the automobile which had commenced to back, and effected a stop.
The feature which distinguishes this case from L.D.P., Johnson, and King, is that here the officers observed an object being transferred from the individual outside the car to someone in the car. We consider that this factor, when taken together with the other factors present in the case, such as the telephone tip that several black males were dealing drugs behind the Escambia Arms, appellant and the other suspects were at the precise location specified in the telephone tip, and the high crime nature of the locale, is sufficient to provide the requisite founded suspicion for the initial stop of the vehicle.
The arrest and search which followed flowed from the justified stop. Deputy Salter testified that the car was stopped because officers observed what *643 they thought was a drug transaction in progress. Once the vehicle was stopped, the officers observed appellant place something white in his mouth. Based on training and experience, the officers believed the object to be crack cocaine. One officer grabbed appellant by the throat in an effort to prevent him from swallowing the object. Appellant was then removed from the vehicle and searched, which search revealed the crack pipe. When the officers observed appellant place something they believed to be crack cocaine in his mouth, probable cause to arrest existed. See Adams v. State, 523 So.2d 190, 193 (Fla. 1st DCA 1988). At that point, the search was justified because the officers had probable cause to believe a crime was being committed in their presence, i.e., that appellant was in possession of and was attempting to dispose of contraband. Id. Therefore, the trial court's denial of the suppression motion was proper.
The second issue concerns the denial of appellant's motion for judgment of acquittal. The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence to support every element of the charged offense. Anderson v. State, 504 So.2d 1270, 1271 (Fla. 1st DCA 1986). When a defendant moves for judgment of acquittal, he admits all facts adduced in evidence and every conclusion favorable to the adverse party that a jury might reasonably and fairly infer from the evidence. Id., at 1271; Mitchell v. State, 493 So.2d 1058, 1060 (Fla. 1st DCA 1986).
Appellant in this case was charged at Count II of the information with unlawful use or possession with intent to use drug paraphernalia, a violation of section 893.147(1)(b), Florida Statutes. At the conclusion of the state's case in chief, at conclusion of all the evidence, during the conference on jury instructions, and in closing argument, defense counsel argued that intent to use is an essential element of the crime charged, and that the state failed to prove the element of intent.
In a similar context, in Williams v. State, 529 So.2d 345 (Fla. 1st DCA 1988), the defendant was charged with a violation of section 893.145(5), Florida Statutes (1985), which makes it unlawful to possess scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances. Williams admitted knowledge of the presence of the triple-beam scale he was charged with using or with the intent to use, but the state presented no evidence that he used or intended to use the scale for an illicit purpose. In Williams, as in the instant case, the trial court denied the defendant's motions for judgment of acquittal. Because in Williams the state failed to prove the intent element of the charged offense, the court held that denial of judgment of acquittal was error, and the cause was reversed.
In this case, as in Williams, the state relied on circumstantial evidence to prove that appellant used the crack pipe or that he intended to use it. In its answer brief, the state tacitly concedes that it was required to prove intent. However, in enumerating the evidence and its reasonable inferences which purportedly establish that appellant used the crack pipe, or possessed it with intent to use, the state relies on evidence presented in the defense case.
In State v. Pennington, 534 So.2d 393 (Fla. 1988), the court answered the following certified question in the affirmative:
Where the state has failed to make a prima facie case and the defendant moves for a judgment of acquittal which is denied and thereafter, during the defendant's case evidence is presented that supplies essential elements of the state's case, is it reversible error for the trial court to deny the defendant's motion for judgment of acquittal made at the conclusion of all of the evidence?
534 So.2d at 394. The court observed that Florida Rule of Criminal Procedure 3.380 "expressly states that a defendant's motion for judgment of acquittal at the close of the state's case is not waived by the defendant's subsequent introduction of evidence if properly preserved by a motion at the close of all the evidence." 534 So.2d at 395-396. The court ruled that after an *644 erroneous denial of judgment of acquittal, the state may not rely on evidence introduced in the defense case to supply a missing element in the state's case, and disapproved all other conflicting decisions. 534 So.2d at 396.
In this case, the state asserts the element of intent was established by evidence at trial that (1) appellant had a crack pipe in his right front pocket, (2) appellant knew the object was a crack pipe, and (3) the pipe had cocaine residue on it. The second item, that appellant knew the object was a crack pipe, was adduced during the defense case, when appellant testified that he was not stupid, that he knew what the item was, and that he resented such an item being in the vehicle without his knowledge, due to the implications associated with it.
Since the state may not rely on appellant's testimony to supply a missing link in its case, the question is whether evidence that appellant had a crack pipe in his pocket, and that the pipe contained traces of cocaine residue, is sufficient to establish the element of intent to use. In Williams, the triple-beam scale, i.e., drug paraphernalia, contained no trace of cocaine or any other illegal substance. Thus, there was nothing in Williams to support an inference that the scale had been used to weigh or measure controlled substances. In contrast, in this case, tests established the presence of cocaine residue on the pipe, albeit in minuscule quantity. In these circumstances, the denial of judgment of acquittal does not constitute reversible error.
The final issue concerns defense counsel's oral request for a jury instruction incorporating the elements of the offense of possession of drug paraphernalia, as set forth in the statute and in the information. The trial court denied the request, and gave the Florida Standard Jury Instruction, which states in part:
Before you can find the defendant guilty of Possession of Drug Paraphernalia, the State must prove the following two elements beyond a reasonable doubt:
1. (Defendant) had in his possession drug paraphernalia.
2. (Defendant) had knowledge of the presence of the drug paraphernalia.
As appellant asserts, the jury instruction is an incomplete statement of the law. See § 893.147(1), Fla. Stat. (1987). Moreover, since intent was an issue in the case, the instruction given, which omitted the elements of use and intent, was prejudicial in that the jury was not instructed to determine whether the state proved the elements of use or intent to use.
The state contends the error is not reversible because: (1) defense counsel failed to object, and (2) defense counsel failed to submit the requested instruction in writing. It is well settled that, absent fundamental error, a timely objection is required to preserve the issue of giving or failing to give a particular jury instruction for appellate review. Fla.R.Crim.P. 3.390(d); City of Orlando v. Birmingham, 539 So.2d 1133 (Fla. 1989); Darden v. State, 475 So.2d 217 (Fla. 1985). The rule is based on necessity and fairness, i.e., "[a] timely objection puts the trial judge on notice that an error may have occurred and thus provides the opportunity to correct the error at an early stage of the proceedings." City of Orlando, 539 So.2d at 1134.
With regard to the second point, Fla.R. Crim.P. 3.390(c) states in part:
(c) At the close of the evidence, or at such earlier time during the trial as the court reasonably directs any party may file written requests that the court instruct the jury on the law as set forth in the requests.
See also Watkins v. State, 519 So.2d 760, 761 (Fla. 1st DCA 1988)  "When a jury instruction is requested that is not part of the Florida Standard Jury Instructions, the requested instruction must be submitted in writing to the trial court if the issue is to be preserved for appellate review." Accord Holley v. State, 423 So.2d 562, 564 (Fla. 1st DCA 1982).
Fundamental error that may be urged on appeal, though not properly preserved in the trial court, is error that amounts to a denial of due process. Castor v. State, 365 So.2d 701, 704 fn. 7 (Fla. 1978). In Bullard v. State, 515 So.2d 1028 (Fla. 1st DCA *645 1987), review denied, 529 So.2d 693 (Fla. 1988), an issue involved an erroneous robbery instruction, which had not been preserved by timely objection. In determining whether the error was fundamental and therefore reversible in the absence of an objection, the court examined Williams v. State, 400 So.2d 542 (Fla. 3d DCA 1981). In Williams, the third district held that the omission, without objection, of the intent element from a robbery instruction was harmless error. The Williams court stated that fundamental error must involve a critical and disputed issue at trial. 400 So.2d at 544-545. See also Leary v. State, 406 So.2d 1222 (Fla. 4th DCA 1981), where the court agreed that failure to charge on the element of intent is prejudicial error, but held where there was neither evidence nor argument raising specific intent as an issue in the trial, failure to instruct on intent does not amount to a deprivation of due process. In Bullard, as in Williams and Leary, the intent element had not been disputed at trial. Accordingly, this court concluded the failure to instruct on intent was not fundamental error.
In the instant case, defense counsel made no formal objection as such to the trial court's failure to instruct on the elements of use and intent to use drug paraphernalia as contained in the statute and in the charging document. However, the manner in which this issue was developed at trial clearly brought the error to the attention of the trial judge and afforded him an opportunity to correct, or avoid, the error early in the proceedings. In a similar vein, although defense counsel did not submit a written version of the requested instruction, the transcript reflects that counsel referred the judge to section 893.147(1) of the Florida Statutes and to Count II of the information, both of which constitute written versions of the requested instruction. Furthermore, since the requested instruction involved a disputed issue at trial, failure to give the requested instruction constituted fundamental error within the contemplation of Bullard v. State, and cases cited therein. As a final note, the trial court's refusal of the requested instruction was improper in that it deprived appellant of his only defense. See Hooper v. State, 476 So.2d 1253 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1501, 89 L.Ed.2d 901 (1986); Randolph v. State, 526 So.2d 931 (Fla. 1st DCA), review denied, 536 So.2d 245 (Fla. 1988).
We recognize that the trial court in this case relied upon the Florida Standard Jury Instructions in Criminal Cases. While the standard jury instructions are intended to assist the trial court in its responsibility to charge the jury on the applicable law, the instructions are intended only as a guide, and can in no wise relieve the trial court of its responsibility to charge the jury correctly in each case.[1]
Accordingly, the denial of the requested jury instruction is reversed, and the matter is remanded for new trial on the Count II charge of possession of drug paraphernalia, after which the jury should be instructed in a manner which comports with section 893.147(1)(b), Florida Statutes. We note also that the record provided this court does not contain a written sentence conforming to the oral sentence pronounced on July 12, 1989. Failure to prepare a written sentence to conform to the oral sentence is error. See Davis v. State, 511 So.2d 430, 432 (Fla. 2d DCA 1987). Therefore, if after retrial appellant is again found guilty, a written sentence must be prepared to conform to the oral sentence pronounced at the sentencing proceeding. *646 In all other respects, the trial court's rulings on the appealed issues are affirmed.
SMITH, WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] Indeed, the preface to the standard jury instructions expressly states as much:

The Court hereby authorizes the publication and use of the revised instructions in criminal cases and the instructions in misdemeanor cases, but without prejudice to the rights of any litigant objecting to the use of one or more of such approved forms of instructions. The Court recognizes that the initial determination of the applicable substantive law in each individual case should be made by the trial judge. Similarly, the Court recognizes that no approval of these instructions by the Court could relieve the trial judge of his responsibility under the law to charge the jury properly and correctly in each case as it comes before him. This order is not to be construed as any intrusion on that responsibility of the trial judges.
Fla.Std.Jury Instr. (Crim.), p. x (1981).