578 So.2d 523 (1991)
STATE of Florida, Appellant,
v.
John ISAACS, Appellee.
No. 90-2397.
District Court of Appeal of Florida, Fourth District.
May 1, 1991.
*524 Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellant.
David R. Smith, Fort Lauderdale, for appellee.
STONE, Judge.
We affirm an order granting a motion to suppress. At the hearing, an officer testified that at 8:30 p.m. he was on patrol in an area high in the sale of street level narcotics. The officer saw Isaacs driving slowly down the street, circle and return. A man riding a bicycle approached Isaacs' car. The officer testified that he was unaware whether this man was a drug dealer. He observed the man point to an area by an adjacent cemetery. Isaacs drove his car to that area, which was on a public street with the cemetery on each side, where he was soon joined by the man on the bicycle. It was dark and there were no street lights. Observing through binoculars, the officer could not see what transpired. The officer, suspicious that a drug transaction might have taken place, subsequently stopped Isaacs' car. The officer held Isaacs until a back-up officer arrived. He then searched part of the car while the back-up officer detained the driver. Appellee was read Miranda rights and questioned. Isaacs then admitted that he had cocaine rocks. A search of his person revealed the drugs.
Police may not stop vehicles on a bare suspicion that the occupants are violating the law. Coladonato v. State, 348 So.2d 326 (Fla. 1977). However, the state contends that the officer had a sufficiently founded suspicion to stop the vehicle for further investigation. Cf. Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980).
In Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990), the opinion recites that a surveillance was being conducted in a neighborhood known for its drug activity and "[t]he appellant, the only white male in the area, was observed talking to several other males. He subsequently approached a man in an automobile which was parked in a lighted parking lot. After the man extended his open hand, palm up, toward the appellant, the officer who observed this activity, but who did not see anything passing between the two men, requested the assistance of uniformed officers in the area. The officers converged on the men and stopped the appellant." The court held that these facts alone were insufficient to raise the officer's suspicion to a "founded" suspicion.
In State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988), we affirmed a suppression order under similar circumstances. In Hoover, a deputy observed a car driven by the defendant, a white male, in a predominantly black and heavy drug sales area. A black male was leaning up against the door. The deputy observed the pedestrian then walk away "kinda fast" into a trial in the woods. The deputy subsequently stopped the car on his suspicion that a drug deal had occurred. See also, King v. State, 521 So.2d 334 (Fla. 4th DCA 1988); Kearse v. State; Bolinger v. State, 576 So.2d 875 (Fla. 2d DCA 1991); G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985).
We find no error in the conclusion of the trial court that the officer had insufficient information to constitute a "founded suspicion" of criminal activity to legally justify a stop. Therefore, the stop and seizure were not legally justified.
POLEN, J., concurs.
GARRETT, J., dissents with opinion.
GARRETT, Judge, dissenting.
I respectfully dissent and write with the hope that our appellate courts will revisit the issue of what constitutes "founded suspicion" in a hand-to-hand street level drug transaction.
*525 The trial judge granted appellee's motion to suppress and the order of suppression contained the following findings of fact:
Officer John Salazar of the Hallandale Police Department was on patrol in the northwest section of Hallandale on November 21, 1989. At approximately 8:30 p.m., Officer Salazar observed a vehicle, a Ford Bronco, driven by a white male, slowly circle the block in the vicinity of 700 Northwest 7 Avenue. This predominantly black neighborhood area, was known by Officer Salazar to be an area where drugs are often sold.
As he watched, with the aid of binoculars, Officer Salazar saw a black man on a bicycle, approach the vehicle. The black male pointed to a public road that goes through a cemetery and the Bronco proceeded down that road. Officer Salazar drove down a street that ran parallel to it.
Officer Salazar watched the Bronco through binoculars from his position approximately one block away. The Bronco came to a stop in the road, in the cemetery. It was dark and there were no streetlights in the area, where the vehicle was stopped.
Shortly after the Bronco stopped, the same black man on a bicycle rode up to the driver's door of the Bronco and stayed there for approximately thirty (30) seconds, before riding away. Officer Salazar did not recognize either the black man on the bicycle or the [appellee]. Neither were known to be drug offenders at the time he observed them. From his position, Officer Salazar admitted he could not see what the two were doing but he suspected a transaction may have occurred.[[1]]
Based on his suspicions, the officer stopped the Bronco when it drove out of the area.[[2]] He searched the interior of the vehicle and the [appellee] discovering a small number of cocaine rocks.
The order also set forth the basis for the trial judge's ruling:
Following the precedents set forth by the Fourth District Court of Appeal in Kearse v. State, 384 So.2d 272 (4th DCA 1980); YState v. Michael Hoover, 520 So.2d 696 (4th DCA 1988); and King v. State, 521 So.2d 334 (4th DCA 1988), this court finds that the information Officer Salazar had at his disposal was insufficient to support a `founded suspicion' of criminal activity and cannot legally justify a stop.
I believe that Officer Salazar had a "founded suspicion" that criminal activity had taken place and that his seizure of the cocaine rocks was lawful. Section 901.151(2), Florida Statutes (1989), in pertinent part, provides:
Whenever any law enforcement officer ... encounters any person under circumstances which reasonably indicate that such person has committed .. . a violation of the criminal laws ... he may temporarily detain such person for the purpose of . .. ascertaining the circumstances surrounding his presence abroad which led the officer to believe that he had committed ... a criminal offense.
As stated in Adams v. Williams, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616-617 (1972):
The Fourth Amendment does not require an officer, who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow ... a criminal to escape. On the contrary, ... it may be the essence of good police work to adopt an immediate response ... A brief stop of a suspicious individual in order ... to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
Also, an officer may briefly stop a moving vehicle to investigate a "founded suspicion" that its occupant is involved in criminal activity. See United States v. Hensley, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604, 610 (1985).
*526 Whether an officer had a "founded suspicion" which gave him the right to stop a citizen (or the vehicle the citizen occupies) is determined from the "totality of the circumstances  the whole picture  must be taken into account," United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1980), including "the modes and patterns of operation of certain kinds of lawbreakers." Cortez, 449 U.S. at 418, 101 S.Ct. at 695. From the whole picture "a trained officer draws inferences and makes deductions  inferences and deductions that might well elude an untrained person." Id.
As noted in Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968):
We deal here with a entire rubric of police conduct  necessarily swift action predicated upon on-the-spot observations of the officer on the beat  which historically has not been, and as a practical matter could not be, subjected to the warrant procedure.
Because a hand-to-hand street level drug transaction happens so swiftly, an officer may only have a moment in which to become suspicious about the otherwise innocent looking activity. As a result, the officer is not always certain about his or her suspicion. However, hard certainty is not required for a "founded suspicion." In Cortez, 449 U.S. at 418, 101 S.Ct. at 695, the Supreme Court remarked:
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same  and so are law enforcement officers... . [T]he evidence thus gathered must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
Sub judice, Officer Salazar as a trained officer understood that a drug transaction had taken place and in today's society, even an untrained citizen would have had the same understanding. He immediately responded and stopped the vehicle to investigate his "founded suspicion" and obtain more information as to whether appellee possessed illegal drugs. During the investigation, Officer Salazar gave Miranda warnings and asked if appellee had "any contraband upon his person." Appellee replied that he did in his right front pants pocket. That admission gave Officer Salazar probable cause to arrest and search appellee.
NOTES
[1] Officer Salazar testified that he observed "[a] movement like an exchange between hands."
[2] Officer Salazar testified that he "conducted a traffic stop" because he "believed that a narcotics transaction had just taken place."