761 So.2d 1186 (2000)
David HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-1829.
District Court of Appeal of Florida, Fourth District.
June 28, 2000.
*1187 Richard L. Jorandby, Public Defender, and Dea Abramschmitt, Special Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Late one night police officers were conducting surreptitious surveillance of an urban street corner where they suspected narcotics activity. They were hidden some 25-30 feet away behind a wooden fence and green foliage. One officer dispatched another to disperse a crowd boisterously conversing in the area. The people separated and left, and the officer who had dispersed them drove away. One of the men, defendant in this case, entered a nearby auto, did a U-turn, and drove back toward the corner. He halted his car near a building where the group had been gathered, briefly alighting to pick up a 3-inch, yellow-brown pill bottle. As he drove away, the secreted officer radioed other officers not far away, who then stopped him. A search of his vehicle turned up controlled substances. The trial court denied his motion to suppress. We reverse.
As we ourselves have several times held, we review orders denying suppression of evidence de novo. Walker v. City of Pompano Beach, 763 So.2d 1146 (Fla. 4th DCA 2000); Melendez v. Sheriff of Palm Beach County, 743 So.2d 1145 (Fla. 4th DCA 1999); C.G. v. State, 689 So.2d 1246 (Fla. 4th DCA 1997). The United States Supreme Court has explained the methodology for search and seizure decisions under the Fourth Amendment as follows:
"The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: `[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.'"
Ornelas v. United States, 517 U.S. 690, 696-697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The Court rejected a deferential standard of appellate review of search and seizure decisions in favor of de novo review, explaining:
"We think independent appellate review of these ultimate determinations of reasonable suspicion and probable cause is consistent with the position we have taken in past cases. ... A policy of sweeping deference would permit, `[i]n the absence of any significant difference in the facts,' `the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause.' Such varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable.
"In addition, the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles. Finally, de novo review tends to unify precedent and will come closer to providing law enforcement officers with a defined `set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified *1188 in the interest of law enforcement.'" [f.o.]
517 U.S. at 697-698, 116 S.Ct. 1657. In this de novo review, we defer to the factual findings of the trial judge that are supported by competent substantial evidence, but we consider for ourselves whether as a matter of law those facts amount to a reasonable suspicion or probable cause.
The state argues that the mere act of picking up a pill bottle in this area, essentially with little more, establishes at least a founded suspicion and thereby empowered the officers to effect the stop. Under Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the propriety of an investigatory stop must be judged against an objective standard: whether the facts available to the police officer at the time of the seizure "warrant a man of reasonable caution in the belief" that the action was appropriate. As Judge Stone wrote in State v. Isaacs, 578 So.2d 523 (Fla. 4th DCA 1991), "[p]olice may not stop vehicles on a bare suspicion that the occupants are violating the law." 578 So.2d at 524; see also Coladonato v. State, 348 So.2d 326 (Fla.1977). The Isaacs facts are strikingly similar to those here:
"an officer testified that ... he was on patrol in an area high in the sale of street level narcotics. The officer saw Isaacs driving slowly down the street, circle and return. A man riding a bicycle approached Isaacs' car. The officer testified that he was unaware whether this man was a drug dealer. He observed the man point to an area by an adjacent cemetery. Isaacs drove his car to that area, which was on a public street with the cemetery on each side, where he was soon joined by the man on the bicycle. It was dark and there were no street lights. Observing through binoculars, the officer could not see what transpired. The officer, suspicious that a drug transaction might have taken place, subsequently stopped Isaacs' car. The officer held Isaacs until a backup officer arrived. He then searched part of the car while the back-up officer detained the driver."
578 So.2d at 524. We affirmed a finding that the Isaacs officer had "insufficient information" for a stop based on a founded suspicion.
In Isaacs Judge Stone also relied on Peabody v. State, 556 So.2d 826 (Fla. 2nd DCA 1990), as to which he described the facts as follows:
"a deputy observed a car driven by the defendant, a white male, in a predominantly black and heavy drug sales area. A black male was leaning up against the door. The deputy observed the pedestrian then walk away `kinda fast' into a trail in the woods. The deputy subsequently stopped the car on his suspicion that a drug deal had occurred."
578 So.2d at 524. These facts, too, are not fairly distinguishable from those in the present case, at least for determining the legal question whether the officer's own account presented a proper basis for an investigatory stop.
In our continuing refinement of what constitutes a reasonable search or seizure for Fourth Amendment purposes, we have not yet reached the point where the simple act of retrieving an object from a public street can constitute a founded suspicion of illegal narcotics activity. Thus, while we accept the trial judge's resolution of contested facts at the suppression hearing, we simply disagree with the legal conclusion that those facts as resolved in favor of the state make out a case for any kind of a stop or seizure.
REVERSED.
STONE, J., concurs.
SHAHOOD, J., dissents with opinion.
SHAHOOD, J., dissenting.
I would affirm the trial court's denial of the motion to suppress. Like the majority, I accept the trial judge's resolution of the contested facts at the suppression hearing. However, I disagree with the *1189 majority and agree with the trial judge's conclusion that the totality of the facts in this particular case formed a sufficient basis for an investigatory stop and ultimate seizure. See Tamer v. State, 484 So.2d 583 (Fla.1986)(citing U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).