570 So.2d 1071 (1990)
Henry CURRY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 90-400.
District Court of Appeal of Florida, Fifth District.
November 29, 1990.
*1072 James B. Gibson, Public Defender, and Lyle Hitchens, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David G. Mersch, Asst. Atty. Gen., Daytona Beach, for appellee.
W. SHARP, Judge.
Curry appeals from his conviction for unlawful possession of a controlled substance.[1] Pursuant to State v. Ashby, 245 So.2d 225 (Fla. 1971), Curry pled nolo contendere, after reserving his right to appeal the correctness of the trial court's denial of his motion to suppress evidence of cocaine. The cocaine was obtained by a police officer who ordered Curry to stop under circumstances which did not justify an investigatory stop. Curry kept walking, but he threw on the ground a pill bottle containing rocks of cocaine. We affirm.
At approximately 11:00 p.m., Officer Harting and others undertook a "sweep" for narcotics in a known high drug activity area. Some of the police patrol approached a closed bar, the Silver Shadow, from the front. Harting and his partner approached the Silver Shadow from the back, intending to catch anyone who ran from the front to the rear. All members of the police team wore bluejeans, green T-shirts labeled "Deputy Sheriff," and had their badges showing on their gun belts.
When Curry saw the police officers in front of the bar, he walked rapidly to the back towards Harting's partner. Curry had been standing in front of the Silver Shadow with two other black males. No exchange of money or contraband was observed by the police officers.
Harting walked up behind Curry and said, "Stop, police." Curry continued to walk away, but he threw a pill bottle on the ground. Harting was about ten feet away from Curry. He quickly picked up the pill bottle and then grabbed Curry. Harting opened the pill bottle and saw the rocks of cocaine. He arrested Curry and searched him.
The trial court ruled that under these circumstances Harting had no founded, objective basis to stop Curry. We agree. Curry's presence in a known drug trafficking area, and his attempt to walk away after seeing the police patrol's arrival, are not sufficient circumstances, by themselves, to constitute a founded suspicion Curry had been, or was, or intended to engage in criminal activity. Taylor v. State, 540 So.2d 887 (Fla. 5th DCA 1989); Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989); Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988).
Had there been other additional circumstances, Harting could have been justified in making an investigatory stop, and thereafter searching for a weapon. State v. Worthington, 543 So.2d 1313 (Fla. 5th DCA 1989); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). And had there been more than a founded suspicion, so as to justify an arrest, Curry could have been searched for cocaine as well. See Conti v. State, 540 So.2d 934 (Fla. 1st DCA 1989).
However, lacking a founded suspicion, Harting could not legally stop Curry, and he could not have searched him for *1073 weapons or contraband. Had he done so, the evidence found on Curry's person would have been suppressed, pursuant to the Fourth Amendment[2] exclusionary rule. See Jordan v. State, 544 So.2d 1073 (Fla. 2d DCA 1989); Bastien; Gipson. But here, Curry threw down the contraband under the policeman's nose without being ordered to do so.
This court has not addressed the issue decided in Spann v. State, 529 So.2d 825 (Fla. 4th DCA 1988), of whether drugs or other evidence thrown down by a suspect after being ordered by police to "stop" or "freeze," should be suppressed because the police lack a founded suspicion sufficient to allow an investigative stop pursuant to section 901.151, Florida Statutes (1989). Spann held that when a defendant stops in response to an order of a police officer under these circumstances, the defendant's act of throwing down a packet containing contraband is a product of the illegal stop. The court found the state's abandonment theory was, as a matter of law, "not persuasive." See also, Wallace v. State, 540 So.2d 254 (Fla. 4th DCA 1989).
The trial court in this case attempted to distinguish Spann on the ground that in Spann (as well as in Wallace) the defendant actually stopped in response to the police officer's order before he threw down the package of drugs. In Curry's case, Curry kept walking away as he dropped the pill bottle. The trial court reasoned that an illegal stop was never accomplished before the dropping of the cocaine gave the police valid grounds to stop and arrest. This is a difference, but one we think is of little substance or consequence.
We choose to follow State v. Oliver, 368 So.2d 1331 (Fla. 3d DCA 1979) and A.G. v. State, 562 So.2d 400 (Fla. 3d DCA 1990), which we think states the better rule. In Oliver, as well as A.G., the police ordered the defendants to "Stop, police," under circumstances which gave the police no founded suspicion to make an investigatory stop. In response, the defendants threw down contraband and ran. They were caught and arrested.
The Third DCA held that although the initial police stop order was invalid, that did not constitute an illegal search when the defendant, after stopping or while still running away, threw down contraband. Rather, the defendants' act of throwing down the drugs was "voluntary abandonment." The drugs, in turn, gave the police sufficient grounds to stop and arrest the defendants.
Only when the police begin an actual physical search of a suspect does abandonment become involuntary and tainted by an illegal search and seizure. See Morris v. State, 519 So.2d 706 (Fla. 2d DCA 1988). Nor can the police, after making an illegal stop, order a defendant to empty his pockets or open his fist, without founded suspicion. Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989); State v. Crum, 536 S.W.2d 507 (Mo. App. 1976). Any evidence obtained under those circumstances would be subject to the exclusionary rule.
This rule appears to us to be more consistent with the one developed in the consent to search cases, after an illegal Terry[3] stop. Evidence discovered after consent to search is given, is not per se tainted, if consent was freely given (although the state has higher burden of proof in such cases). See Jordan. Here, evidence obtained after, or in the course of making an illegal stop, by the defendant's own decision to drop or throw it away, is not per se tainted by the illegal stop. If the police proceed to search a defendant or order him to reveal the contents of his pockets after making an illegal stop, the Fourth Amendment line requiring suppression will be crossed. Because it was not crossed in this case, we affirm and acknowledge a conflict with Spann.
AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] § 893.13(1)(f), Fla. Stat. (1989).
[2] U.S. Const. Amend. IV.
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).