639 So.2d 96 (1994)
Lester POOLE, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2617.
District Court of Appeal of Florida, Fifth District.
June 10, 1994.
Rehearing Denied July 11, 1994.
*97 James B. Gibson, Public Defender, and Susan A. Fagan, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca Roark Wall, Asst. Atty. Gen., Daytona Beach, for appellee.
DIAMANTIS, Judge.
Lester J. Poole appeals his convictions and sentences which were entered by the trial court after he pled nolo contendere to a violation of probation and to the new substantive offenses of carrying a concealed firearm and unlawful possession of a controlled substance.[1] On appeal, Poole contends that the trial court erred in denying his pretrial motion to suppress and in directing him to pay a state attorney's fee. We affirm the trial court's decision denying the motion to suppress, but vacate that part of the sentence which directs Poole to pay a state attorney's fee.
Poole filed a motion to suppress, requesting that the trial court exclude from evidence the firearm and the cocaine which were seized from his person pursuant to a pat-down search. In the motion Poole argued that the evidence was seized as a result of an unlawful stop-and-frisk and unlawful arrest. The testimony elicited at the hearing on Poole's motion indicated that at approximately 12:30 p.m. on March 16, 1992, Sergeant Taylor of the Daytona Beach Police Department received a call from a known resident of the Palmetto Park Housing Project. This resident had provided reliable information to Taylor in the past concerning criminal activity in the area. The resident informed Taylor that hair cutting and drug sales were occurring at 116 Hudson Street in Palmetto Park. The resident, who lived close enough to be able to observe activity at 116 Hudson Street, described those involved as "several black males". Taylor was familiar with 116 Hudson Street because he had received several complaints about drug sales there in the past and he had made an arrest there about two to three weeks earlier.
Taylor, accompanied by Officer Wright, proceeded to 116 Hudson Street where the officers encountered approximately five or six black males and one female congregated behind the building. One of the men was on a porch cutting someone's hair while others sat nearby. Poole stood out in the open about 10 to 15 feet from the person cutting hair. Upon seeing the officers, Poole furtively removed something from the waistband of his shorts, placed the object into his front left pocket, and kept his hand in the pocket. Wright believed that the object was a beeper, and he related his observation to Taylor. Taylor testified that, in his experience, individuals in the area involved in drug activity normally wore beepers. Taylor previously had arrested individuals wearing beepers for drug-related offenses. Several times, while Taylor was doing paperwork on these individuals, the individuals received calls on their beepers from potential customers wanting to buy drugs.
The officers decided to approach Poole, who began to walk away from them but stopped when the officers engaged him in conversation. After Poole was stopped by the officers, he appeared nervous, had his head down, and was not very responsive. None of the other individuals present made any furtive movements or walked away from the officers. As he approached Poole, Taylor observed that the bulge in Poole's pocket was not consistent with that of a beeper. Taylor feared that the object was something other than a beeper and, because he was concerned for his safety, Taylor asked Poole to take his *98 hand out of his pocket. When Poole did not immediately comply with Taylor's request, Taylor proceeded to pat the bulge and detected a hard object which he immediately concluded was a gun. After removing the gun from Poole's pocket, Taylor arrested Poole for carrying a concealed firearm. Taylor subsequently conducted a search incident to the arrest and discovered several rounds of ammunition, cocaine, rolling papers, and a beeper.
Upon review of this evidence the trial court denied the motion to suppress, finding that the officers were justified under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in stopping Poole to investigate whether he was engaged in criminal activity and in frisking Poole to insure that he was not carrying a weapon.[2] We agree.
Under Terry, in order to justify a stop, "a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably justify the stop." State v. Webb, 398 So.2d 820, 822 (Fla. 1981). The officer must have a well-founded, articulable suspicion that the defendant is engaged in criminal activity. Popple v. State, 626 So.2d 185, 186 (Fla. 1993). Following a valid stop, a police officer, for his own protection or the safety of others, may conduct a pat-down search "to find weapons that he reasonably believes or suspects are then in the possession of the person whom he has stopped." Webb, 398 So.2d at 822.[3] An officer's observation in a detained person's clothing of an unusual or large bulge which the officer believes might be a weapon has been deemed sufficient to uphold a pat-down search. See Williams v. State, 492 So.2d 1051, 1054 (Fla. 1986); T.P. v. State, 585 So.2d 1020, 1021 (Fla. 5th DCA 1991). See also Pennsylvania v. Mimms, 434 U.S. 106, 111-12, 98 S.Ct. 330, 333-34, 54 L.Ed.2d 331 (1977); State v. Callaway, 582 So.2d 745, 745-46 (Fla. 2d DCA 1991).
Here, the officers had authority to stop Poole because, based on a totality of the circumstances, they had a reasonable and founded suspicion that Poole was engaged in criminal activity. See Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972); State v. Dickerson, 481 N.W.2d 840, 843 (Minn. 1992), aff'd on other grounds, 508 U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); T.P. v. State, 585 So.2d 1020, 1021 (Fla. 5th DCA 1991); Ricks v. State, 549 So.2d 789, 790 (Fla. 5th DCA 1989); Curry v. State, 532 So.2d 1316, 1317-18 (Fla. 1st DCA 1988). Furthermore, the police officers were justified in believing that Poole was armed and posed a threat to the officer's safety based on their observation of the large bulge in Poole's pocket. Williams v. State, 492 So.2d 1051, 1054 (Fla. 1986); T.P. v. State, 585 So.2d 1020, 1021 (Fla. 5th DCA 1991).[4]
On the issue of the payment of costs imposed by the trial court, we vacate the assessment of the $250 state attorney's fee because this fee is not authorized. Hollingsworth v. State, 622 So.2d 129 (Fla. 5th DCA 1993); Turkaly v. State, 615 So.2d 222 (Fla. 5th DCA 1993); Smith v. State, 606 So.2d 501 (Fla. 5th DCA 1992). The state contends that, according to the transcript, it is apparent that the trial court was assessing a "cost of prosecution" under section 939.01, Florida *99 Statutes (1991). Because there appears to be a factual dispute as to what the trial court actually intended, we remand the issue of this disputed cost to the trial court for resolution. Hollingsworth, 622 So.2d at 129; O'Neal v. State, 566 So.2d 375 (Fla. 5th DCA 1990).
Convictions AFFIRMED; sentences AFFIRMED in part; VACATED and REMANDED in part.
PETERSON, J., concurs.
W. SHARP, J., concurs specially, with opinion.
W. SHARP, Judge, concurring specially.
I agree with Judge Diamantis' opinion except for his conclusion that the police officers had a reasonable and founded suspicion Poole was engaged in criminal activity when they first initiated contact with him, justifying their actions as an "investigatory stop," or a Terry stop.[1] However, I think this case should be affirmed as a police-citizen encounter, which escalated to a proper Terry stop as soon as the deputy saw a large bulge in Poole's pocket, giving him reasonable grounds to think Poole was armed with a concealed firearm. They then had a valid basis to make a pat-down search for weapons. State v. Doyle, 615 So.2d 871 (Fla. 4th DCA 1993); T.P. v. State, 585 So.2d 1020 (Fla. 5th DCA 1991).
What concerns me about this decision is that, in my view, it erodes the circumstances the Florida courts have required for a "founded suspicion ... a person is engaged in criminal activity." Looking at the circumstances in this case, in a light most favorable to the state as we must do,[2] the officer testified:
1. The officers got a phone call from a known informant (a person living in the neighborhood) that there was `drug activity' behind 116 Hudson Street.
2. There had been previous complaints about drug sales at that place and prior arrests.
3. When the two officers arrived at 116 Hudson, they saw several black males and one female, some on the porch where one was cutting another's hair, and some a distance away in the parking lot.
4. No one moved except Poole. Poole took something from his belt and put it in his pocket. The officers thought it was a "beeper" (often used by drug dealers).
5. Poole started to walk away and put his hand and into his pocket in a "furtive" manner.
6. One deputy asked him to stop, and Poole did, but he was unresponsive and nervous.
7. About that time Sergeant Taylor saw the bulge in Poole's pocket, inconsistent with a beeper, and consistent with a firearm.
A number of cases decided by the Florida courts have held that a "founded suspicion" which is necessary for a Terry stop or a stop pursuant to section 901.151(2), Florida Statutes (1989), does not arise from the fact that a person is in a high crime area,[3] nor does flight from an officer in a high crime area constitute founded suspicion,[4] nor are suspicious movements of a person combined with flight sufficient.[5] That is basically all the officers had to go on in this case.
*100 In Robinson v. State, 556 So.2d 450 (Fla. 1st DCA 1990), the police had more, but the court concluded it was insufficient to constitute a "founded suspicion." In Robinson, the police received an anonymous radio tip that an individual exactly fitting Robinson's description,[6] was selling drugs at a specific location. It was a known drug use and sales area. Robinson began walking away when the police arrived. They immediately searched him for drugs. The court held that the police did not have a reasonable suspicion necessary to justify an investigatory stop.
In my view, this case should be affirmed on the ground that although the deputies initially had no founded suspicion to detain Poole, when they saw what they thought was a firearm in his pocket, they were justified in searching him for weapons. See Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Compare Jones v. State, 570 So.2d 433 (Fla. 5th DCA 1990). And, evidence of the drugs later found after a search incident to arrest, should not have been suppressed. Allgood v. State, 403 So.2d 586 (Fla. 1st DCA 1981).
The affirmance in this case on the ground the police had a "founded suspicion" not only conflicts, in my view, with cases decided by this and other Florida appellate courts, but it also tends to erode section 901.151 and the Fourth Amendment's requirements of "a well-founded, articulable suspicion of criminal activity."[7] It makes the distinction between "mere suspicion" and "well-founded" suspicion more and more blurred. See also Curry.
This is the way common law develops and changes on a case-by-case basis. If it continues in this direction, gradually the standards for mere suspicion and founded suspicion will become so similar any distinction between them will become meaningless. Someone needs to acknowledge that this is what is happening in this area of Fourth Amendment case law, and that need provides my motivation for writing this special concurring opinion.
NOTES
[1] Prior to entering his plea, Poole properly reserved the right to appeal the trial court's decision to deny his motion to suppress. The motion to suppress, if granted, would be dispositive of the case.
[2] A trial court's ruling on a motion to suppress comes to this court clothed with a presumption of correctness, and we must interpret the evidence, and derive reasonable inferences and deductions therefrom, in a manner most favorable to sustain the trial court's ruling. McNamara v. State, 357 So.2d 410, 412 (Fla. 1978).
[3] The legislature codified Terry by enacting Chapter 69-73, Laws of Florida, now encompassed in section 901.151, Florida Statutes (1993), which is entitled "Stop and Frisk Law". We acknowledge that section 901.151(5) states that the officer must have "probable cause" to believe that the detained person is armed in order to search such person; however, our supreme court equated the term "probable cause" as used in the statute to the Terry standard of "reasonable belief" rather than the traditional stricter standard of "probable cause." See Webb, 398 So.2d at 824-25.
[4] We also conclude that the officers lawfully seized the cocaine during their search of Poole. Once they discovered the gun in Poole's possession, the officers had probable cause to arrest Poole for carrying a concealed firearm and to conduct a search incident to the arrest. Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924-25, 32 L.Ed.2d 612 (1972).
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] State v. Nova, 361 So.2d 411 (Fla. 1978); State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979).
[3] See Curry v. State, 570 So.2d 1071 (Fla. 5th DCA 1990); Jones v. State, 570 So.2d 433 (Fla. 5th DCA 1990); Kindell v. State, 562 So.2d 422 (Fla. 5th DCA 1990); Jordan v. State, 544 So.2d 1073 (Fla. 2d DCA 1989); State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988); Morris v. State, 519 So.2d 706 (Fla. 2d DCA 1988); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988); G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985).
[4] See Curry v. State, 570 So.2d 1071 (Fla. 5th DCA 1990); Kindell v. State, 562 So.2d 422 (Fla. 5th DCA 1990); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989); Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989); Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987).
[5] See Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989); Jenkins v. State, 524 So.2d 1108 (Fla. 3d DCA 1988); R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983).
[6] Black male, forty years old, wearing brown jacket and green army pants.
[7] Popple v. State, 626 So.2d 185, 186 (Fla. 1993).