DIAMANTES, Judge.
Lester J. Poole appeals his convictions and sentences which were entered by the trial court after he pled nolo contendere to a violation of probation and to the new substantive offenses of carrying a concealed firearm and unlawful possession of a controlled substance.[1] On appeal, Poole contends that the trial court erred in denying his pretrial motion to suppress and in directing him to pay a state attorney’s fee. We affirm the trial court’s decision denying the motion to suppress, but vacate that part of the sentence which directs Poole to pay a state attorney’s fee.
Poole filed a motion to suppress, requesting that the trial court exclude from evidence the firearm and the cocaine which were seized from his person pursuant to a pat-down search. In the motion Poole argued that the evidence was seized as a result of an unlawful stop-and-frisk and unlawful arrest. The testimony elicited at the hearing on Poole’s motion indicated that at approximately 12:30 p.m. on March 16, 1992, Sergeant Taylor of the Daytona Beach Police Department received a call from a known resident of the Palmetto Park Housing Project. This resident had provided reliable information to Taylor in the past concerning criminal activity in the area. The resident informed Taylor that hair cutting and drug sales were occurring at 116 Hudson Street in Palmetto Park. The resident, who lived close enough to be able to observe activity at 116 Hudson Street, described those involved as “several black males”. Taylor was familiar with 116 Hudson Street because he had received several complaints about drug sales there in the past and he had made an arrest there about two to three weeks earlier.
Taylor, accompanied by Officer Wright, proceeded to 116 Hudson Street where the officers encountered approximately five or six black males and one female congregated behind the building. One of the men was on a porch cutting someone’s hair while others sat nearby. Poole stood out in the open about 10 to 15 feet from the person cutting hair. Upon seeing the officers, Poole furtively removed something from the waistband of his shorts, placed the object into his front left pocket, and kept his hand in the pocket. Wright believed that the object was a beeper, and he related his observation to Taylor. Taylor testified that, in his experience, individuals in the area involved in drug activity normally wore beepers. Taylor previously had arrested individuals wearing beepers for drug-related offenses. Several times, while Taylor was doing paperwork on these individuals, the individuals received calls on their beepers from potential customers wanting to buy drugs.
The officers decided to approach Poole, who began to walk away from them but stopped when the officers engaged him in conversation. After Poole was stopped by the officers, he appeared nervous, had his head down, and was not very responsive. None of the other individuals present made any furtive movements or walked away from the officers. As he approached Poole, Taylor observed that the bulge in Poole’s pocket was not consistent with that of a beeper. Taylor feared that the object was something other than a beeper and, because he was concerned for his safety, Taylor asked Poole to take his *98 hand out of his pocket. When Poole did not immediately comply with Taylor’s request, Taylor proceeded to pat the bulge and detected a hard object which he immediately concluded was a gun. After removing the gun from Poole’s pocket, Taylor arrested Poole for carrying a concealed firearm. Taylor subsequently conducted a search incident to the arrest and discovered several rounds of ammunition, cocaine, rolling papers, and a beeper.
Upon review of this evidence the trial court denied the motion to suppress, finding that the officers were justified under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in stopping Poole to investigate whether he was engaged in criminal activity and in frisking Poole to insure that he was not carrying a weapon.[2] We agree.
Under Terry, in order to justify a stop, “a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably justify the stop.” State v. Webb, 398 So.2d 820, 822 (Fla.1981). The officer must have a well-founded, articulable suspicion that the defendant is engaged in criminal activity. Popple v. State, 626 So.2d 186, 186 (Fla.1993). Following a valid stop, a police officer, for his own protection or the safety of others, may conduct a pat-down search “to find weapons that he reasonably believes or suspects are then in the possession of the person whom he has stopped.” Webb, 398 So.2d at 822.[3] An officer’s observation in a detained person’s clothing of an unusual or large bulge which the officer believes might be a weapon has been deemed sufficient to uphold a pat-down search. See Williams v. State, 492 So.2d 1051, 1064 (Fla.1986); T.P. v. State, 585 So.2d 1020, 1021 (Fla. 5th DCA 1991). See also Pennsylvania v. Mimms, 434 U.S. 106, 111-12, 98 S.Ct. 330, 333-34, 54 L.Ed.2d 331 (1977); State v. Callaway, 582 So.2d 745, 745-46 (Fla. 2d DCA 1991).
Here, the officers had authority to stop Poole because, based on a totality of the circumstances, they had a reasonable and founded suspicion that Poole was engaged in criminal activity. See Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972); State v. Dickerson, 481 N.W.2d 840, 843 (Minn.1992), aff'd on other grounds, 508 U.S.-, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); T.P. v. State, 585 So.2d 1020, 1021 (Fla. 5th DCA 1991); Ricks v. State, 549 So.2d 789, 790 (Fla. 5th DCA 1989); Curry v. State, 532 So.2d 1316, 1317-18 (Fla. 1st DCA 1988). Furthermore, the police officers were justified in believing that Poole was armed and posed a threat to the officer’s safety based on their observation of the large bulge in Poole’s pocket. Williams v. State, 492 So.2d 1051, 1054 (Fla.1986); T.P. v. State, 585 So.2d 1020, 1021 (Fla. 5th DCA 1991).[4]
On the issue of the payment of costs imposed by the trial court, we vacate the assessment of the $250 state attorney’s fee because this fee is not authorized. Hollingsworth v. State, 622 So.2d 129 (Fla. 5th DCA 1993); Turkaly v. State, 615 So.2d 222 (Fla. 5th DCA 1993); Smith v. State, 606 So.2d 501 (Fla. 5th DCA 1992). The state contends that, according to the transcript, it is apparent that the trial court was assessing a “cost of prosecution” under section 939.01, Florida *99 Statutes (1991). Because there appears to be a factual dispute as to what the trial court actually intended, we remand the issue of this disputed cost to the trial court for resolution. Hollingsworth, 622 So.2d at 129; O’Neal v. State, 566 So.2d 375 (Fla. 5th DCA 1990).
Convictions AFFIRMED; sentences AFFIRMED in part; VACATED and REMANDED in part.
PETERSON, J., concurs.
W. SHARP, J., concurs specially, with opinion.

. Prior to entering his plea, Poole properly reserved the right to appeal the tried court's decision to deny his motion to suppress. The motion to suppress, if granted, would be dispositive of the case.

. A trial court’s ruling on a motion to suppress comes to this court clothed with a presumption of correctness, and we must interpret the evidence, and derive reasonable inferences and deductions therefrom, in a manner most favorable to sustain the trial court’s ruling. McNamara v. State, 357 So.2d 410, 412 (Fla.1978).

. The legislature codified Terry by enacting Chapter 69-73, Laws of Florida, now encompassed in section 901.151, Florida Statutes (1993), which is entitled "Stop and Frisk Law”. We acknowledge that section 901.151(5) states that the officer must have "probable cause” to believe that the detained person is armed in order to search such person; however, our supreme court equated the term "probable cause” as used in the statute to the Terry standard of "reasonable belief” rather than the traditional stricter standard of "probable cause.” See Webb, 398 So.2d at 824-25.

.We also conclude that the officers lawfully seized the cocaine during their search of Poole. Once they discovered the gun in Poole's possession, the officers had probable cause to arrest Poole for carrying a concealed firearm and to conduct a search incident to the arrest. Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924-25, 32 L.Ed.2d 612 (1972).