543 So.2d 363 (1989)
Kenneth Leon DANIELS, Appellant,
v.
STATE of Florida, Appellee.
No. 88-926.
District Court of Appeal of Florida, First District.
May 16, 1989.
*364 Michael E. Allen, Public Defender, and Maria Ines Suber, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran, Asst. Atty. Gen., Tallahassee, for appellee.
BARFIELD, Judge.
Kenneth Daniels pled nolo contendere to one count of possession of cocaine with intent to sell, specifically reserving his right to appeal the trial court's order denying his motion to suppress the cocaine seized during a stop and frisk. We hold that the evidence does not support the trial court's order, and we reverse Daniels' conviction.
On December 12, 1986, at approximately 2:20 p.m., Tallahassee narcotics officers Greg Adams and Jay Etheridge observed 20 to 30 people gathered behind Crump's Tavern in Frenchtown. Riding alone in an unmarked police car, Adams approached the group from the rear, and Etheridge positioned himself in the front of the tavern. Daniels, who was part of the group, saw Adams enter the alley, and turning very suddenly, he ran into the rear door. The crowd dispersed and Adams alerted Etheridge on the police radio that a black male wearing a tan jacket had just run suspiciously through the back door of the tavern.
Etheridge exited his car and walked toward the tavern. When he reached the front door, he encountered face to face in the doorway, a black male fitting the radio description and later identified as Daniels. Daniels had been looking behind him as if checking the back door, and he had both hands in the pockets of his waist-length jacket. Etheridge twice asked Daniels to remove his hands from his pockets, but Daniels removed only his left hand. Etheridge grabbed the right hand through the jacket and, as he began to turn Daniels around to start his frisk, a few rocks of crack cocaine fell from the jacket pocket to the ground.
At the suppression hearing, Officer Adams testified that Daniels looked very nervous and surprised when he saw the officer in the alley; and, that he suspected Daniels only because he looked suspicious and was the first one in the group to enter the tavern. Adams stated that in his past experiences on the crack cocaine squad, a large group gathered behind Crump's Tavern meant that the individuals were involved in drug deals. However, Adams did not observe anyone in the group possessing or using drugs, exchanging money or drugs; nor did he see any weapons. In addition, he did not know Daniels nor did he have any information regarding any criminal activity involving Daniels.
Officer Etheridge testified that initially he did not intend to conduct an investigatory stop, but because he encountered Daniels face-to-face and Daniels had his hands in his pockets, it was standard procedure to ask him to remove his hands. When Daniels refused, Etheridge had to grab him for the officer's own safety. In doing so he felt clumps of rocks which he suspected to *365 be rock cocaine. Etheridge stated that he was trained not to deal with people who have their hands in their pockets until they removed their hands.
In denying the motion to suppress, the trial court found that Officer Etheridge did not intend to conduct a search for narcotics when he first encountered Daniels. Instead, the officer reasonably suspected that Daniels possessed a weapon in that he confronted him with his hands in his pockets in a high crime area. At the point of confrontation, the officer had a right to stop and ask for identification, and to ask Daniels to remove his hands for the officer's own protection. When Daniels refused to remove the other hand, Etheridge then had a well-founded suspicion that he was armed, and a pat-down search for a weapon was authorized.
The "Florida Stop and Frisk Law" authorizes a police officer to temporarily stop and detain an individual based upon circumstances which reasonably indicate past, present or future criminal activity, for the purpose of ascertaining identity of that individual and investigating the circumstances giving rise to the officer's suspicions. Section 901.151(2), Fla. Stat. (1985). If an officer validly stops and detains an individual, and has probable cause to believe that the individual seized is armed with a dangerous weapon and poses a threat to the officer or any other person, the officer may search the individual to the extent necessary to disclose the weapon. Section 901.151(5).[1] In order to justify a temporary stop under the statute, the police officer must have a "founded suspicion" that the individual committed, is committing, or is about to commit a crime, based upon factual observations in light of the officer's knowledge and experience. Curry v. State, 532 So.2d 1316 (Fla. 1st DCA 1988). In other words, based on the totality of the circumstances, the officer must articulate in particular and objective terms his reasonable suspicion of criminal activity. Tamer v. State, 484 So.2d 583 (Fla. 1986). A "bare" suspicion of criminal activity is insufficient to justify an investigatory stop. Coladonato v. State, 348 So.2d 326 (Fla. 1977).
The trial court properly rejected the stop based upon any founded suspicion that Daniels was involved in drug activity. Although Officer Adams' past experience as a crack cocaine specialist in that area led him to suspect that Daniels was involved in drug use or trafficking, Adams did not observe the exchange of drugs or money, nor did he know Daniels or suspect him of any other crime. It is well-established that flight from an approaching police officer, even in a high crime area, without more, does not give rise to a founded suspicion of criminal activity and does not justify a stop and frisk. Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989); Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988); Antela v. State, 514 So.2d 423 (Fla. 3d DCA 1987); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987); McClain v. State, 408 So.2d 721 (Fla. 1st DCA 1982); Jackson v. State, 319 So.2d 617 (Fla. 1st DCA 1975). Therefore, Adams' radio dispatch, alone, could not serve as a reasonable basis for stopping Daniels.
In fact, the evidence established that Etheridge stopped Daniels based on a suspicion that Daniels possessed a weapon. However, the officer failed to articulate any basis for suspecting criminal activity as required in order to justify a stop and detention under section 901.151(2) and Terry v. Ohio.[2] Etheridge merely testified that it was his standard procedure not to deal with any person who refused to remove his hands from his pockets in the officer's presence. Suspicious or furtive movements are not reasonable grounds to justify a stop and detention, even when combined with flight in a high crime area. See e.g., Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989) (movement of hand *366 behind back upon seeing police in high crime area, alone, did not justify reasonable suspicion of criminal activity or immediate threat to safety of officers); Baggett v. State, 531 So.2d 1028 (Fla. 1st DCA 1988) (fact that defendant placed his hand in his jacket pocket upon being approached by police, in high crime area, does not give rise to a founded suspicion); Jenkins v. State, 524 So.2d 1108 (Fla. 3d DCA 1988) (defendant placing his hand behind his back was insufficient basis to raise a bare suspicion to a founded suspicion); Walker v. State, 514 So.2d 1149 (Fla. 2d DCA 1987) (quick movement by defendant as if to conceal something behind his hip, while sitting on the front porch of a house located in a high crime area, is a legally insufficient reason to justify an investigatory stop). R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983) (the fact that defendant placed his hand in his jacket and began to walk faster upon seeing police, does not give rise to more than a bare suspicion of illegal activity).
The lawfulness of a pat-down search for weapons presupposes that the stop was valid and that the officer then formed a reasonable suspicion, based on articulable facts, that the suspect was armed and dangerous. In the instant case, Officer Etheridge would have had no reason to fear for his own safety if he would not have impermissibly stopped Daniels in the first place.[3] Etheridge articulated no more than a "bare" or "gut" feeling that Daniels was involved in criminal activity, and his attempt to bootstrap the justification for the stop based on a belief that Daniels was possibly armed, is invalid under stop and frisk law.
Accordingly, we REVERSE Daniels' conviction for possession of cocaine with intent to sell.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] "Probable cause" in this context is not equivalent to the stricter "probable cause" standard which must justify a search warrant or an arrest. State v. Webb, 398 So.2d 820, 824-825 (Fla. 1981). Rather, in an investigatory search for weapons, the officer need only have a reasonable belief that the individual is armed and dangerous. Id.
[2] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] Although not raised as an issue in the briefs, we cannot uphold the stop based on the rationale in Lightbourne v. State, 438 So.2d 380, 387-389 (Fla. 1983), because we do not find that the facts in this case support a consensual encounter.