611 So.2d 552 (1992)
David Tyrone SHAW, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3680.
District Court of Appeal of Florida, First District.
December 22, 1992.
*553 C. Richard Parker, Public Defender; Diane Elizabeth See, Assistant Public Defender, Gainesville, for appellant.
Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Appellant, David Tyrone Shaw, pled nolo contendere to one count of possession of cocaine, reserving the right to appeal the trial court's denial of the motion to suppress evidence. He was adjudicated guilty of the offense pursuant to a final judgment and sentence, and was placed on probation for a period of three years. Appellant does not contest the initial stop of the vehicle in which he was a passenger. At issue is whether the subsequent pat-down weapons search and seizure of cocaine were lawful. The facts presented in this record lead us inescapably to conclude that Sergeant Lee failed to articulate a valid basis for performing a weapons pat-down pursuant to section 901.151, Florida Statutes (1991), and that the state failed to lay an adequate predicate to demonstrate that the officer had probable cause to conduct the search that led to the seizure of cocaine. Because the search was unauthorized and unlawful, the evidence seized as a result thereof was illegally obtained and should have been suppressed pursuant to section 901.151(6). We reverse.
Shortly after midnight on May 11, 1991, Sergeant Lee of the Alachua County Sheriff's Office stopped the Toyota in which Shaw was riding along Interstate 75 because it had no operable tag light. The automobile had an Alabama license plate and was driven by John Reynolds. The officer ordered the driver to get out of the car and informed him that the absence of the tag light was the basis for the stop. The driver told Sergeant Lee that he had been visiting his mother in Bradenton and was heading home to Alabama. He was not carrying a driver's license, and Lee did not run a computer check to determine whether Reynolds had a valid license. The driver told the officer that Appellant was the owner of the vehicle. The officer instructed Reynolds to walk to the front of the patrol car.
The officer then spoke to Shaw, who produced the vehicular registration form showing that he was the owner. In testimony at the suppression hearing, the officer described Appellant as "obviously nervous," with his voice trembling and his weight constantly shifting. Shaw kept his hands low in his lap and "always kept a hand down," even when he reached into the glove compartment. He told Sergeant Lee that he and Reynolds had been to St. Petersburg to visit Shaw's cousin. The officer instructed Appellant to go to the patrol car where Reynolds was.
After doing some paperwork, the officer informed the two men that they were free to leave. Shaw and Reynolds walked back to the Toyota, and the officer called out to Appellant: "Mr. Shaw, do you have anything illegal in your car, such as  guns, drugs, or contraband?" Although Shaw replied that he had none of the above, Lee described him as extremely nervous and unable to remain still. Apparently, the officer also requested Shaw's consent to search the Toyota, but no search of the car was conducted then.
Lee testified that the men's conflicting accounts of their prior whereabouts led him to believe that something was amiss, but he was not sure whether there was a weapon or what the circumstances were. Before exiting the vehicle, Appellant had seemed to be trying to conceal something. Although Shaw was not aggressive, the officer said he felt that Shaw might be about to fight him or flee. Defense counsel pointed out that, in a prior deposition, the officer had said that if Shaw had waited there very long, Shaw might have fainted.
The appellate briefs are anything but clear on one critical point. Apparently, in response to the officer's question about contraband and request for consent to search, Shaw turned around in such a way *554 that Sergeant Lee first observed a round bulge in Shaw's right front pocket. This occurred after the officer had told Shaw and Reynolds that they were free to leave. Lee did not say anything right then about what he saw in the pocket. A second officer, Deputy Troiano, arrived at the scene of the stop.
A conversation ensued about the car registration and the driver's license, and then Lee instructed Appellant that he was going to frisk him on the outside to make sure that the bulge was not a weapon. When asked whether he had anything in his pockets, Shaw said he had $50. Lee performed a pat-down and felt small, hard individual squares of rock or some other like substance. The officer testified that he did not feel anything that he believed was a weapon. Instead, he thought Shaw had crack cocaine in his pocket. The officer testified that Appellant was not free to leave at that point.
The suspect asked for permission to urinate and was escorted to a more secluded nearby spot because Lee thought that Shaw might try to rid his pocket of its contents. Lee again asked about those contents, whereupon Shaw replied: "Why are you doing this to me?" The officer felt the outside of the pocket again and asked: "Is that drugs in your pocket?" Appellant moved around toward the side of the patrol car, and Sergeant Lee reached down into the pocket, pulled the tip of a bag up to the top of the pocket, and saw what appeared to him to be crack cocaine. He placed Shaw under arrest and, during a subsequent search, found $50 in the pocket where the cocaine had been concealed. Lee testified that, although the drug detection canine was in the patrol car, he had not been retrieved because the officer did not believe the dog could be used to search a person. The suspected cocaine field-tested positive and weighed 28.5 grams. The sheriff's department seized the Toyota. Upon verification of the driver's denial of having any knowledge that Shaw had the cocaine, Reynolds was released from custody.
Section 901.151(5), Florida Statutes (1991), the Florida Stop and Frisk Law, states:
Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
The meaning of "probable cause" to support a valid frisk is different from the stricter "probable cause" standard that must justify a search warrant or an arrest. State v. Webb, 398 So.2d 820, 824 (Fla. 1981); Daniels v. State, 543 So.2d 363, 365 & n. 1 (Fla. 1st DCA 1989). "A valid stop does not necessarily mean that there can be a valid frisk." Webb, 398 So.2d at 822. In Webb, the Florida Supreme Court held that under the exception created in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and codified in section 901.151, "a law enforcement officer, for his own protection or the safety of others, may conduct a pat down to find weapons that he reasonably believes or suspects are then in possession of the person whom he has stopped." 398 So.2d at 822. Cf. L.D.P. v. State, 551 So.2d 1257, 1258 (Fla. 1st DCA 1989), and Gipson v. State, 537 So.2d 1080, 1081 (Fla. 1st DCA 1989) (both holding that an officer must have "probable cause" to believe a suspect is armed before the officer can conduct a patdown search or a frisk of the suspect to the extent necessary to disclose the weapon).
Interpreting the evidence and reasonable inferences in favor of sustaining the trial court's ruling, see McNamara v. State, 357 So.2d 410, 412 (Fla. 1978), the state contends that a reasonably prudent person would have believed there was a threat to safety. The key circumstances *555 on which the state relies are Appellant's extreme nervousness and his keeping one hand low in his lap. The observed bulge in Shaw's pants pocket is an obvious component of the state's argument that Officer Lee's frisk of Shaw for weapons was lawful under the circumstances, pursuant to section 901.151 and the Terry line of decisions.
Because an accurate recitation of the facts known to the officer at the time of the stop, frisk, and search is a key component of our resolution of the issues in this cause, we feel compelled to clarify what appears to be a misconstruction of the facts in the state's answer brief. The state maintained that "Deputy Lee testified that he noticed the round bulge in [A]ppellant's pocket right after [A]ppellant exited his car and prior to any conversation about the registration and driver's license." This apparent confusion is understandable, as the questions presented to the officer did not address the events in chronological order.
On cross-examination by defense counsel, Sergeant Lee testified that he initially saw the bulge after he had told Shaw and Reynolds that they could leave, and after the two suspects headed from the patrol car back to the Toyota. Officer Lee gave the following testimony on the issue of whether he believed Appellant posed a safety threat:
Q. Sergeant Lee, during your direct testimony you indicated that at one point you observed a large bulge in the right pocket of Mr. Shaw's pants; is that correct?
A. Yes.
Q. All right. Now, you did not, in fact, notice that bulge in his pants until after you had told Mr. Reynolds and Mr. Shaw to have a good day, you know, when they had started walking back to the car? I mean, you noticed the bulge after you asked to search the car; is that correct?
A. Yeah. My sequence in a situation like that is  once I determine I want to search the vehicle, then I, for my safety, I usually do a  a pat-down on the subjects, for my safety, of course.
Q. I understand. But my question is: You did not notice that bulge in his pocket until after Reynolds and Shaw had walked away to leave?
A. Basically, yes.
Q. All right. And  did you  In terms of your safety, did Mr. Shaw do anything to indicate that he might be violent or might have a weapon on him?
A. There appeared to be something amiss. I wasn't sure if it was a weapon or what the circumstances were at that time. But even in the automobile, whenever we got out and we were talking, it appeared he was trying to conceal something from me. I didn't know at that time what it was.
Q. But he wasn't threatening to you in any way; is that correct?
A. Well, it's a matter of opinion. If he's  if he's attempting to disguise or hide something from me, then that's a concern of mine from the standpoint that it could be that he's attempting to hide either a weapon or drugs or 
Q. I understand that. But was he aggressive to you in any way?
A. Aggressive, no.
Q. And you indicated also that he was nervous and that you felt that either he was going to fight or flee; is that correct?
A. Yes.
Pursuant to Terry, the permitted search was strictly limited in scope to what was "necessary to protect the officer's safety," if Sergeant Lee had a sufficient articulable and reasonable suspicion to support the belief that Shaw was armed with a dangerous weapon. Doctor v. State, 596 So.2d 442, 444 (Fla. 1992); Winters v. State, 578 So.2d 5, 6 (2d DCA), rev. den., 589 So.2d 292 (Fla. 1991); Meeks v. State, 356 So.2d 45 (2d DCA), cert. den., 364 So.2d 892 (Fla. 1978); L.D.P., 551 So.2d at 1257; Thompson v. State, 551 So.2d 1248, 1249 (Fla. 1st DCA 1948); Dunn v. State, 382 So.2d 727 (Fla. 2d DCA 1980) (officer in stop and frisk situation may not extend search beyond a pat-down of suspect's outer clothing unless pat-down or other circumstances lead officer to conclude suspect *556 has a weapon). In Daniels, we stated that prior to performing a pat-down search for weapons, an officer must have formed "a reasonable suspicion, based on articulable facts," that the suspect is armed and dangerous. 543 So.2d at 366. The supreme court in Webb noted that Terry does not allow a generalized cursory search for weapons or, indeed, a search for anything other than weapons. 398 So.2d at 822; Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 343-44, 62 L.Ed.2d 238 (1979).
We find it beyond dispute that immediately after his initial encounter and conversation with Appellant at the patrol car, Sergeant Lee had no reason to fear for his own or others' safety. In fact, he told Shaw and Reynolds that they were free to leave, and the two men returned to the Toyota. As Shaw approached his automobile, the officer called out to him and asked for permission to search the car, and only after that request did he notice the bulge in Shaw's pocket. Lee described what he saw in Shaw's right front pants pocket as "kind of a round bulge." He testified: "I didn't know at that point whether it was a weapon or just exactly what it was at that point, before I actually did a frisk." When asked whether he had anything in his pockets, Shaw replied that he had only $50. We hold that Sergeant Lee failed to articulate a sufficient basis for conducting the pat-down upon Appellant. See M.A.H. v. State, 559 So.2d 407 (Fla. 1st DCA 1990) (lawful initial detention in high-crime area did not justify subsequent pat-down search conducted merely as a matter of routine police practice). Cf. Richardson v. State, 599 So.2d 703 (Fla. 1st DCA 1992); White v. State, 458 So.2d 1150 (1st DCA 1984), pet. for rev. den., 464 So.2d 556 (Fla. 1985) (reversing order denying suppression motion, where officer testified he suspected the defendant had a weapon, although the officer did not know what was in the confiscated small manila envelope but knew it was neither metal nor wood).
Although the facts in Richardson concerning the defendant's extreme nervousness and the observed bulge under his clothing are similar to those in the instant case, the dispositive distinction is that the arresting officer's testimony in Richardson demonstrated "some additional articulable suspicions" that the suspect was armed with a dangerous weapon. 599 So.2d at 704-05; Thompson, 551 So.2d at 1249. In other words, the state laid a stronger, adequate predicate in Richardson to justify the officer's moving beyond a routine stop for a traffic citation. Cf. Johnson v. State, 537 So.2d 117 (Fla. 1st DCA 1988) (frisk could not be sustained based on officers' general comments that "[m]ost of these narcotics are related to weapons").
In contrast, the present record fails to meet the requirements of section 901.151, and the state failed to lay an adequate predicate to prove that the officer had probable cause for the subsequent seizure. Doctor, 596 So.2d at 445. In Dunn, the officer felt a cylindrical object in the suspect's shirt pocket in the course of a post-arrest pat-down search for weapons. The officer testified that he "suspected the object was marijuana and had no apprehension that it was a weapon." 382 So.2d at 728. The Second District Court held that the marijuana should have been suppressed, stating that the seizure of contraband during a weapons pat-down is permissible only when the officer reasonably believes the object felt is a weapon. The court opined:
Perhaps the unspoken reason for limiting searches and seizures to objects thought to be weapons is that any other rule would have the practical effect of allowing law enforcement officers to search for contraband with less than probable cause on the ostensible premise of looking for weapons.
382 So.2d at 729. As we stated in Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981), the state had the burden of establishing probable cause to conduct the warrantless search of Appellant.
As in the present case, the search for weapons in Doctor culminated in the discovery of cocaine. The officer in that case stopped the vehicle because it had a broken taillight. As Doctor exited the car pursuant *557 to the officer's request, he walked sideways in a futile attempt to hide the front of his body. The trooper noticed a bulge in the suspect's pants and thought it might be a weapon. When Doctor failed to remove the contents of his pants, a deputy performed a pat-down and soon realized the bulge was not a weapon. Rather, he felt what he believed was a package of cocaine, basing his belief upon feeling the texture of what seemed to be a plastic bag and the "peanut brittle type feeling in it," which he equated to the texture of crack cocaine. The trial court denied Doctor's motion to suppress and the Fourth District Court affirmed, but cited a conflict with Dunn. 596 So.2d at 444.
Unlike the situation in Dunn, in Doctor the state argued that the police had probable cause, not merely reasonable suspicion, to seize the cocaine. "Whether a police officer has sufficient probable cause to believe that a suspect is carrying illegal contraband will depend on the totality of circumstances existing at the time." Doctor, 596 So.2d at 445, citing P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. den., 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). "Relevant to this inquiry is the officer's specific experience with respect to the particular narcotic in question." Doctor, 596 So.2d at 445, citing Cross v. State, 560 So.2d 228 (Fla. 1990).
In satisfying its initial burden of proving an officer has probable cause for the seizure, see Barfield, the state must demonstrate that probable cause was based on facts known to exist. Doctor. The court in Doctor addressed the need for an adequate predicate if the state is to demonstrate probable cause:
Thus, an officer's experience and training are relevant to the extent that they provide specific facts from which the officer could reasonably conclude that a crime was being committed during the situation in question. The State must present more than the naked subjective statement of a police officer who has a "feeling" based on "experience" that the accosted citizen is committing a crime in order to provide the court with facts upon which a determination of probable cause can reasonably be made.
596 So.2d at 445. In Doctor, the state provided the specific factual basis of the deputy's experience to establish its claim of probable clause.
The state failed to lay an adequate predicate in the case sub judice to demonstrate that Sergeant Lee had probable cause to seize the cocaine. As was pointed out in the initial brief, the testimony concerning Lee's experience in narcotics was sketchy, and the record lacks sufficient competent testimony as to whether he had experience with cocaine. No indication was given as to how many arrests Lee had made in narcotics cases, and how many of those were the result of pat-down searches. Sergeant Lee testified that he reached down into Appellant's pocket and pulled the tip of the bag to the top of the pocket to "see what was actually in his pocket." The instant record is clearly distinguishable from that in Doctor. A search may not be validated merely by what it produces. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Johnson v. State, 547 So.2d 699 (Fla. 1st DCA 1989) (suspect's evasive response to officer's inquiry about bulge in pocket, which resembled the shape of a wallet, did not justify officer's use of self-help by reaching into the pocket and extracting small paper sack containing cocaine); Walker v. State, 514 So.2d 1149, 1151 (Fla. 2d DCA 1987). Because the state failed to demonstrate that the officer had either a sufficient basis pursuant to section 901.151 to perform the initial pat-down search for weapons, or probable cause to search Appellant, the resulting seizure was unlawful, and cocaine evidence confiscated during the illegal search should have been suppressed.
The order denying Appellant's motion to suppress is REVERSED.
SMITH and KAHN, JJ., concur.