678 So.2d 843 (1996)
Robert STALLING, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1803.
District Court of Appeal of Florida, First District.
July 29, 1996.
Rehearing Denied September 16, 1996.
*844 Francis Jerome Shea, P.A., Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General, and Mark C. Menser, Assistant Attorney General, Tallahassee, for Appellee.
ALLEN, Judge.
The appellant challenges his conviction for trafficking in cocaine, arguing that the trial court erred in denying his motion to suppress evidence. Because the warrantless pat-down search of the appellant that resulted in the seizure of crack cocaine was not supported by any recognized exception to the warrant requirement, we reverse.
The appellant was a passenger in an automobile driven by Brenda Shelton when Officer Baker pulled the automobile over for a traffic infraction. Although Shelton's driver's license was in order, the automobile was rented, and neither she nor the appellant was listed on the rental agreement as an authorized driver. Officer Baker then contacted the rental agency, which refused to allow Shelton and the appellant further use of the automobile. Officer Baker told the appellant that he and Shelton would be driven to a telephone where they could arrange alternate transportation. The officer patted down the appellant prior to permitting him to sit in the police cruiser. During the course of the pat-down, the officer found a bag containing three packages of crack cocaine.
The appellant was arrested and charged with trafficking in cocaine. A pretrial motion to suppress was filed and an evidentiary hearing was held. The court denied the motion by written order, concluding that the search was conducted for "officer safety" and that "permission was given." The appellant subsequently entered a plea of nolo contendere to the trafficking charge, reserving the right to appeal the denial of the motion to suppress.
The appellant contends that the trial court erred in denying his motion to suppress the crack cocaine because the pat-down search of his body was conducted in violation of the stop and frisk law, section 901.151(5), Florida Statutes, and article I, section 12 of the Florida Constitution. Article I, section 12 guarantees the right of persons to be free from unreasonable searches and seizures:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
It is undisputed that the officer did not have a warrant to conduct the pat-down search of the appellant. When no warrant has been secured, the rule is that the search or seizure is per se unreasonable unless it falls within one of the well established exceptions to the warrant requirement. See Jones v. State, 648 So.2d 669, 674 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995). Although the judge made no finding to this effect, the state in its brief has suggested that the search of the appellant was valid because the officer had a *845 reasonable suspicion of criminal activity. We need not decide whether there was a basis for reasonable suspicion that the appellant was engaged in criminal activity because more is required before an officer may conduct a pat-down search of a suspect:
Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon.
§ 901.151, Fla. Stat. (emphasis added). In Shaw v. State, 611 So.2d 552, 554 (Fla. 1st DCA 1992), we further explained the permissible scope of a pat-down search conducted pursuant to a legal detention:
A valid stop does not necessarily mean that there can be a valid frisk.... [U]nder the exception created in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and codified in section 901.151, a law enforcement officer, for his own protection or the safety of others, may conduct a pat down to find weapons that he reasonably believes or suspects are then in possession of the person whom he has stopped.

(quotation marks and citations omitted) (emphasis supplied). As the statute and case law indicate, an officer must have probable cause to believe a suspect is armed before the officer can conduct a pat down search or frisk of the suspect to ascertain the presence of a weapon. See Shaw; Rouse v. State, 643 So.2d 696 (Fla. 1st DCA 1994); see also L.D.P. v. State, 551 So.2d 1257, 1258 (Fla. 1st DCA 1989); Gipson v. State, 537 So.2d 1080, 1082 (Fla. 1st DCA 1989).
In this case, the officer testified as follows:
Q After [the driver] got in the car, I believe Mr. Stalling stepped out of the passenger side of the car. Did he say or do anything to threaten you at that point?
A No, sir, he did not.
Q Did he at any point say or do anything that you interpreted as a threat to your safety?
A No, sir.
Q Did he ever say or do anything to indicate to you that he might have a weapon?
A No, sir.
It is clear from this testimony that prior to the pat-down search the officer did not have probable cause to believe that the appellant was armed with a dangerous weapon.
We therefore address the question of whether an officer's routine pat-down of a detainee for officer safety prior to placing him in a police cruiser is a well established exception to the warrant requirement. Our research of United States Supreme Court opinions construing the Fourth Amendment has failed to reveal such an exception. And the plain language of article I, section 12 of the Florida Constitution precludes us from creating an exception not recognized by the United States Supreme Court.
The prosecution placed its primary reliance upon the theory that the appellant had consented to the search. Indeed, the prosecutor said at the suppression hearing:
The only real issue in this case, I would submit, is the consent issue. And I think that's going to be just a matter of the Court's determining the credibility of Officer Baker versus a four-time convicted felon.
In this case, however, we actually have more than just the defendant, who unequivocally testified that he did not consent to any search, versus Officer Baker, who claimed the appellant "didn't have any objections to the pat-down." Here, we also have the video tape of the officer's stop of the automobile and subsequent search of the appellant. The tape shows that the officer did not ask the appellant if he could pat him down; he told the appellant that he was going to pat him down. And although at one point, the officer said to the appellant, "If you have a problem with that you need to let me know," the officer did not give the appellant an opportunity to respond. In fact, he cut the appellant *846 off as the appellant was saying, "No, I don't have no weapons, but I don't understand." Without being given permission, the officer proceeded to pat-down the appellant. Thus, the tape shows that the appellant never gave any consent to be searched, let alone a free and voluntary consent. See Florida v. Bostick, 501 U.S. 429, 437-38, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991).
Because the appellant did not consent to the pat-down search, and the search was not otherwise conducted pursuant to a warrant or any recognized exception to the warrant requirement, we conclude that the trial court erred in denying the appellant's motion to suppress. Accordingly, we reverse the appellant's conviction.
MICKLE, J., concurs.
LAWRENCE, J., concurs with written opinion.
LAWRENCE, Judge, specially concurring.
I concur reluctantly with the result reached by the majority in this case. However, I write primarily to dispel any notion that a police officer may not take adequate precautions to insure his or her safety when transporting a person who has been temporarily detained in a police car.
When appellant was stopped, and the car in which he was riding was impounded for the rental agency owner, the officer had no clear legal duty to transport appellant to a telephone where he could arrange for alternate transportation. However, it would have been morally reprehensible for the officer to have left appellant and his female companion on the interstate highway right of way devoid of transportation. The officer told appellant that he would give him a ride to a telephone and that he would have to search him before entry into the police car. The officer did not give appellant a choice of refusing the ride and the consequent elimination of any need for a search of appellant's person. Had a choice been offered, and had appellant agreed to ride in the police car, knowing that he would be searched as a consequence thereof, such acceptance would have constituted consent to the search. In the instant case, appellant was not given an opportunity to refuse the search which was conducted without probable cause and without reasonable suspicion of criminal activity. Had appellant been given a choice and declined the offer of transportation, or had he refused to be searched, the officer in the instant case would have been fully justified in refusing transportation for appellant and eliminating any safety concerns.
The majority finds it unnecessary to decide whether there was a basis for reasonable suspicion that appellant was engaged in criminal activity because more is required, citing section 901.151, Florida Statutes and discussing its implications in the instant case. However, in discussing that statute, the supreme court tells us:
Viewing section 901.151 in the context of its stated purpose to permit officers to temporarily detain and question persons under circumstances reasonably indicating criminal activity, past, present, or imminent, and to frisk where they have reasonable belief that the person detained is armed, it would be unreasonable and contrary to the legislature's intent to require an officer, before he may frisk a person whom he reasonably believes is armed with a dangerous weapon, to have the same probable cause that would be required for an arrest or for a search warrant. If the officer has "probable cause" to believe that a suspect is carrying a concealed weapon, he need not limit his search of the suspect to the frisk allowed under Terry. Under those circumstances, he could immediately arrest and completely search the suspect. It is evident that the Florida stop and frisk law does not require probable cause in the same sense that probable cause is required for a search warrant or for an arrest.

State v. Webb, 398 So.2d 820, 825 (Fla.1981) (emphasis added). I agree that we need not reach this issue in that consent is the dispositive issue.