693 So.2d 670 (1997)
John ALEXANDER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0606.
District Court of Appeal of Florida, Fourth District.
May 7, 1997.
*671 Richard L. Jorandby, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Steven Groves, Assistant Attorney General, Fort Lauderdale, for appellee.
STONE, Judge.
We reverse Appellant's judgment and sentence, concluding that it was error to deny his motion to suppress.
Taking the facts most favorably to the state, Appellant was standing in a public area next to a truck in a group of people at approximately 9:00 p.m. Several officers stopped their vehicles and approached one of the men. An officer observed Appellant with his hands in the waistband of his jeans looking over his shoulder at the conversation. The officer ordered Appellant to remove his hands from his waistband. The officer did not observe any evidence of weapons on Appellant, such as a bulge in his clothing, nor was there any evidence of illegal activity in the immediate vicinity. The officer merely testified that:
Well ... I observed [the Appellant's] back towards me. He was intently watching Deputy Chambliss and looking back at myself and Deputy Adamson. While doing so, he had both of his hands concealed in front of him in his waistband area. It looked, it appeared to me he was intently grabbing or reaching for something.
* * * * * *
I mean, he was just looking back and forth very nervously, back and forth behind him to us, back to Deputy Chambliss, behind to us once again, back to Deputy Chambliss.
Stating that he feared Appellant might have a weapon, the officer grabbed Appellant and placed his hands on the hood of a car and began a "pat down." Appellant broke free and began to run away. The officers observed Appellant shove a container in his mouth, so they tackled him and found cocaine.
The state asserts that Appellant's behavior, by standing with his hands moving in his waistband and nervously looking over his shoulder at the officers, supports a seizure and search for weapons. The cases cited by the state, including Lightbourne v. State, 438 So.2d 380 (Fla.1983); Richardson v. State, 599 So.2d 703 (Fla. 1st DCA 1992); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989), together with two opinions from this district, Joseph v. State, 647 So.2d 1038 (Fla. 4th DCA 1994), and Wilson v. State, 569 So.2d 516 (Fla. 4th DCA 1990), are either distinguishable or otherwise support reversal.
In Lightbourne, the court upheld a pat down search during a consensual encounter based on the defendant's furtive conduct. However, in Lightbourne, the officer's initial contact with the defendant was justified, because the officer was responding to a call to *672 investigate a suspicious car which matched the description of the car in which the defendant was found. The court emphasized that the police had a good reason to be questioning the defendant and had not simply approached the defendant on "their own `hunch' as in the `roving patrol' cases." Id. at 387. See also Richardson (defendant was lawfully stopped for an infraction when his furtive conduct, coupled with unsatisfactory responses to the officer's inquiry about a bulge in his clothing, supplied articulable facts to support a reasonable conclusion that he was armed); Joseph (stop and frisk justified where deputies observed two men in a high crime area run away upon observing the officers; one man yelled "police, raiders or heat," and the defendant stuffed both hands in his waistband). In the instant case, however, the officers' initial contact with Appellant was not justified since there was absolutely no evidence of suspicious or unlawful activity, and no facts to support a reasonable conclusion that Appellant was armed.
Also distinguishable is Wilson, where this court upheld a stop and frisk based on sudden furtive movements and subsequent flight. In Wilson, an officer was walking through a bar with a reputation for violent crimes when he encountered the defendant walking down the hallway. The officer observed the defendant take quick, evasive action after he spotted the officer, and quickly turn and walk back towards the restroom. As he was turning, the defendant made a sudden, furtive hand movement to the front area of his pants as if he was reaching for a gun. The officer, who had fourteen years of experience, was concerned for his safety and therefore stopped and frisked the defendant. This court upheld the search, finding that the defendant's sudden movements, coupled with the officer's years of experience, was sufficient to find reasonable suspicion. We recognize that Wilson may be interpreted as conflicting with this opinion. However, it is distinguishable in that the suspect's conduct was significantly more threatening considering the totality of the circumstances. Wilson should not be read as granting authority, carte blanche, for officers' seizing persons on the hunch that otherwise common place actions or movements pose an undifferentiated threat.
There is substantial authority recognizing the type of activity or observations that will not support a pat down search for weapons under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or section 901.151, Florida Statutes. It is well-established that suspicious movements and flight are, without more, insufficient to support a lawful stop. Breedlove v. State, 605 So.2d 589 (Fla. 4th DCA 1992); Palmer v. State, 625 So.2d 1303, 1306 (Fla. 1st DCA 1993); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989); Britt v. State, 673 So.2d 934 (Fla. 1st DCA 1996).
The Florida Supreme Court in Popple v. State, 626 So.2d 185 (Fla.1993), reversed a conviction where a defendant's furtive movements were insufficient to create a reasonable suspicion to justify an investigative stop. In Popple, the defendant was sitting in a legally parked car where a sheriff's deputy approached from the rear. The deputy noticed the defendant making furtive movements and asked the defendant to exit his vehicle. When the defendant opened the door, the officer saw a cocaine pipe in plain view. The court held that the contraband should have been suppressed because the defendant's furtive movements did not provide the requisite reasonable suspicion to authorize an investigative stop.
In Daniels, 20 to 30 people were gathered behind a bar as one narcotics officer approached from the rear and another officer from the front of the bar. When the defendant saw an officer enter the alley, he turned and ran into the bar as the crowd disbursed. The first officer alerted the other to the description of the man who had run suspiciously. The officer in front observed the defendant looking over his shoulder as if checking the back door. The defendant had both hands in his jacket pockets. The officer asked him to remove his hands from the jacket but the defendant removed only one hand. The officer then grabbed the other hand through the jacket and began to turn the defendant to frisk him, at which time contraband fell out. In reversing, the court recognized that suspicious conduct and furtive *673 movements, even when coupled with flight, will not alone support a seizure and search for weapons. The court reasoned that:
The lawfulness of a pat-down search for weapons presupposes that the stop was valid and that the officer then formed a reasonable suspicion, based on articulable facts, that the suspect was armed and dangerous. In the instant case, Officer Etheridge would have had no reason to fear for his own safety if he would not have impermissibly stopped Daniels in the first place. Etheridge articulated no more than a "bare" or "gut" feeling that Daniels was involved in criminal activity, and his attempt to bootstrap the justification for the stop based on a belief that Daniels was possibly armed, is invalid under stop and frisk law.
Id. at 366. See also Johnson v. State, 610 So.2d 581 (Fla. 1st DCA 1992); Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989); Hamilton v. State, 612 So.2d 716 (Fla. 2d DCA 1993).
In Hamilton v. State, 552 So.2d 1145 (Fla. 5th DCA 1989), members of a police unit approached a group of men standing in an area known for drug sales and use. When the defendant turned toward the officer, the officer observed a bulge in the defendant's shorts. The officer feared there might be a weapon, so she detained and searched the defendant. The court recognized, in reversing, that these circumstances alone cannot support a patdown because nothing in the officer's sworn statement suggested that the defendant was involved in criminal activity. See also Weaver v. State, 548 So.2d 1198 (Fla. 4th DCA 1989).
In Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989), we found insufficient support for a search where two officers patrolling for drug activity in an apartment building in a high crime area saw the defendant walk from one apartment to another. As they approached, he moved his hand behind his back at which time one of the officers, concerned for his safety, grabbed his arm, resulting in the discovery of contraband. We held that these facts would not support a seizure and search for a weapon. See also Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980) (fact that defendant walked briskly away after observing police was insufficient to justify investigative stop; defendant's behavior could not constitute "founded suspicion," especially since officers conceded that they were not aware of any criminal activity, but defendant's actions merely seemed suspicious).
We conclude that here, the facts are insufficient to justify the seizure and search. The officers had not lawfully stopped Appellant, nor had they even engaged him in a voluntary encounter during which arose a reasonable cause to believe he was armed. Appellant was not the object of any articulable suspicion of criminal activity. In fact, there is no evidence that any of the men in the vicinity were engaged in, or suspected of, criminal activity. Neither is there anything in the record tying Appellant to involvement with anyone else in the group, including the party talking to the officers. Appellant was simply standing in public near other persons with his hands in the waistband of his jeans looking over his shoulder at the police (who would certainly be a natural object of curiosity).
Therefore, we reverse and remand for further proceedings.
GLICKSTEIN and STEVENSON, JJ., concur.