703 So.2d 1113 (1997)
Perry C. HARVEY, III, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1345.
District Court of Appeal of Florida, First District.
November 10, 1997.
Rehearing Denied January 9, 1998.
Dean R. LeBoeuf and Matthew K. Foster, of Brooks, LeBoeuf & Bennett, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Carolyn J. Mosley, Assistant Attorney General, Tallahassee, for Appellee.
MINER, Judge.
Expressly reserving his right to appeal the trial court's order denying his motion to suppress evidence seized in connection with his arrest, appellant, Perry C. Harvey, III, entered no contest pleas to possession of cocaine with intent to sell and carrying a concealed firearm. In this appeal he seeks review of the order denying his suppression motion.
At the suppression hearing, the arresting police officer testified he pulled over an automobile driven by Harvey for traveling 55 mph in a 45 mph speed zone. As the officer approached the car, he saw Harvey put one hand down as if placing something under the driver's side seat. The officer ordered appellant to get out of his auto and as Harvey was complying with the officer's direction, he stuck one hand down the back of his trousers. He then exited the vehicle and, at the officer's command, placed his hands behind his head with fingers interlaced and spread his legs. Shortly thereafter, two back-up police officers arrived, and appellant was handcuffed with his hands behind his back. Instead of doing a weapons pat-down search of appellant, the arresting officer pulled back the waistband of Harvey's trousers and looked down between his underwear and buttocks to see what, if anything, appellant had put down the seat of his pants.
Observing what appeared to be a cellophane bag, the officer reached down and extracted it. In the bag were other small bags of powdered cocaine. Appellant was then arrested, and a search of his automobile revealed a loaded 12-gauge shotgun under the front passenger's seat. During his testimony at the suppression hearing, the arresting officer candidly admitted that, although he could easily have done a weapons pat-down search of appellant, he did not and further that he had no probable cause to arrest Harvey until the cocaine was discovered as noted above. The officer also testified that some furtive hand movements of appellant during the encounter caused him concern that appellant may be armed with a dangerous weapon.
Briefly stated, Harvey maintains that the search to which he was subjected was overly intrusive because it was more than a pat-down search for weapons. The State counters *1114 that the search of Harvey's person was reasonable under the circumstances. Applying state and federal law to the facts at hand, we reverse appellant's conviction and remand the case with directions to discharge appellant.
Almost 30 years ago in Terry v. Ohio, 392 U.S. 1, 15, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), the United States Supreme Court addressed the need to protect law enforcement officers faced with individuals whom they have reason to believe are armed but for whom they lack probable cause to arrest. The court held that an officer may conduct a search of an individual in such a situation if the search is "strictly circumscribed by the exigencies which justify its initiation," 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908, and "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the officer." Id. 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. In Terry, the court approved the officer's pat-down search, which did not invade beyond the surface of the suspect's clothing until what appeared to be a weapon was discovered, because the officer "confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons." Id. 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. See Sibron v. New York, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936 (1968)(applying Terry where the officer made no attempt to pat-down before thrusting his hand into Sibron's pocket and taking out an envelope of heroin and holding that "[t]he search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inceptionthe protection of the officer by disarming a potentially dangerous man").
In 1969, the Florida Legislature codified the Terry precepts in the so-called Stop and Frisk law[1]. For purposes of resolving the case at bar, the relevant portions of that statute read, as follows:
(5) Whenever any law enforcement officer authorized to detain temporarily any person under the provision of subsection (2) has probable cause[2] to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
(6) No evidence seized by law enforcement officer in any search under this section shall be admissible against any person in any court of this state or political subdivision thereof unless the search which disclosed its existence was authorized by and conducted in compliance with the provisions of subsections (2)-(5).
The facts in the case at bar appear to us to be remarkably similar to those in two leading Florida cases on this subject. See Raleigh v. State, 404 So.2d 1163 (Fla. 2d DCA 1981), and Winters v. State, 578 So.2d 5 (Fla. 2d DCA), review denied, 589 So.2d 292 (Fla. 1991). Although Raleigh and Winters were extensively argued by appellant below and in his brief on appeal, the State, for whatever reason, has chosen not to address them. In Raleigh a police officer, looking for two men suspected of being in a fight, saw a pair matching the description he was given standing in a parking lot. "As the officer approached in his vehicle, appellant [Raleigh] quickly turned, lifted the front of his shirttail, and made a shoving motion down the front of his trousers." Id. at 1164. Although the officer began a pat-down search, he suddenly reached into Raleigh's waistband, felt a plastic bag which contained contraband, and retrieved it. The officer admitted that he did *1115 not believe the bag contained a weapon. The court found that the officer had exceeded the permissible scope of a pat-down search incident to an investigatory stop because "[i]nstead of conducting a carefully limited search of the outer clothing for weapons, the police officer went into the waistband area to determine what had been concealed by the furtive motion." Id.
In Winters, the police interrupted what may have been a drug sale. One officer stopped Winters, who appeared to be trying to conceal money in his hand. Winters was ordered to put his hands on the hood of a car. When Winters put his hand into his pocket, the back-up officer who had recently arrived withdrew Winters' hand and placed it on the hood of the car. He then searched Winters' pocket to "`see what he [Winters] was after'" and pulled out a quantity of cocaine. Id. at 6. The Second District found that the search exceeded the permissible scope of Florida's Stop and Frisk Law and stated the following:
[T]he search may not ordinarily go beyond a pat-down of the outer clothing. Seizure is permissible if the officer reasonably believes the object felt in a pat-down was a weapon. A pat-down in this case would have revealed no hard object which could have been a weapon.
Id. (citations omitted.)
It is clear to us that the arresting officer in the case at bar was more determined to search appellant's person to discover what had been hidden rather than to determine whether appellant was armed, which is the singular justification for the search incident to an investigatory stop. Additionally, in the case before us, the officer was required to conduct a reasonable, carefully limited search required by Terry and the Florida Stop and Frisk Law. This he did not do and there were simply no extraordinary circumstances necessitating the officer's invasive search as opposed to a pat-down and, in our view, the officer can in no way be considered to have done that which was "minimally necessary" under the circumstances to determine whether the appellant was armed. Thus, we hold that the search of appellant clearly exceeded the bounds of both Florida law and federal law and was per-se unreasonable.
Reversed and remanded with directions.
ALLEN and MICKLE, JJ., concur.
NOTES
[1] § 901.151, Fla. Stat.(1995).
[2] "The meaning of `probable cause' to support a valid frisk is different from the stricter `probable cause' standard that must justify a search warrant or an arrest." Shaw v. State, 611 So.2d 552, 554 (Fla. 1st DCA 1992). As used in subsection (5), "probable cause" means reasonable belief or suspicion in conformity with Terry and other federal precedent. State v. Webb, 398 So.2d 820, 824-825 (Fla.1981).